## FIRST NAT. BANK OF VILLE PLATTE v. COREIL et al.*

### No. 1093.

Court of Appeal of Louisiana, First Circuit.

Jan. 24, 1933.

See, also, 145 So. 393.

Guillory & Guillory, of Ville Platte, and L. A. Fontenot, of Opelousas, for appellant.

Dubuisson & Dubuisson, of Opelousas, for appellees.

MOUTON, J.

Plaintiff bank obtained a judgment, in solido, against J. R. Coreil and J. M. Coreil for $425 with 8 per cent. per annum interest, and for the further sum of $60 with like interest, from July 12, 1930, which was duly recorded on the same date.

Under a fi. fa. issued in favor of the bank on that judgment, the sheriff seized the following described property and advertised it for sale, viz.: "A certain building with equip-

*Rehearing granted March 7, 1933.

ment therein and thereto belonging, operated as a gasoline service station and auto repair shop by J. R. Coreil, situated on the northwest corner of Lot one (1) of plat of survey and subdivision of Estate of Amelie Vidrine, widow of L. M. Coreil, made by M. J. Goudeau, Jr., C. B. and L. H. Guillory, asst. surveyor, on Jan. 17, 1931, and being situated on a lot measuring approximately 160 feet south of and along Main street, by 125 feet measuring south and bordering west on Lewis Street."

Mrs. Marie Louise Pucheu Coreil, wife of J. M. Coreil, purchased the property seized by the bank from J. Robley Coreil, August 28, 1929. In the act of sale the declaration is made that she was living with her husband at the time and that she was purchasing the property with her paraphernal funds and for her separate interest.

On the 3d of July, 1931, Mrs. Marie Louise Pucheu Coreil, again declaring in the deed that she was abiding with her husband, J. M. Coreil, sold this property by authentic act to M. A. Francis Coreil without any declaration therein that she was assisted or authorized by her husband, or that he concurred in the act, or that he had given his consent thereto in writing, and without his signature being affixed to the deed.

This act was recorded July 3, 1931, and on July 7, 1931, the property thus deeded was seized by the bank in execution of its judgment, above referred to.

M. A. Francis Coreil intervened in the proceedings claiming ownership of the property by virtue of his purchase from Mrs. Marie Louise Pucheu Coreil, July 3, 1931, alleging that the deed from her had been recorded three days prior to the seizure; that the purchase had been made with the express consent of her husband, J. M. Coreil; and that, as owner, he was entitled to an injunction to arrest its sale by the sheriff, and praying for judgment against the bank in the sum of $100, with legal interest from judicial demand for the illegal seizure of his property.

The district judge decreed intervener owner of the property, perpetuated the injunction, and condemned the bank to pay $100 for attorney's fees with interest as prayed for by intervener.

The bank, defendant in intervention, appeals.

Property bought in the name of the wife or husband falls into the community. Civ. Code, art. 2402.

When property is bought during marriage though the act states it was purchased with the wife's paraphernal funds, the presumption is that the title was acquired for the community, unless it be also declared in the deed that these paraphernal funds were under her separate administration. She must allege and prove that these funds were under her separate administration, otherwise the property purchased will be considered community. Mrs. Nancy Tally v. William Heffner, 29 La. Ann. 583; Mary Shaw, wife, v. Artemis Hill et al., 20 La. Ann. 531, 96 Am. Dec. 420; Dominguez v. Lee et al., 17 La. 295, and other cases therein cited.

There is no declaration in the deed from J. Robley Coreil to Mrs. Marie Louise Pucheu Coreil that her paraphernal funds with which the act says she was buying were under her separate administration, nor is there any proof of that fact in the record.

Counsel for Francis Coreil, opponent, makes slight reference as to whether this purchase by Mrs. Marie Louise Coreil became a community asset or was a paraphernal acquisition. In their brief, they say, assuming that the property so acquired vested in the community, the sale by Mrs. Marie Louise Coreil to opponent would still be good. They rely to a large extent on section 1 of Act No. 186 of 1920, p. 304, amending article 2334, Civ. Code, which reads, as follows: "But when the title to community property stands in the name of the wife, it cannot be mortgaged or sold by the husband without her written authority or consent."

The same provision is found in Act No. 170 of 1912, p. 310. These acts, with other slight additions not pertinent to the issue presented herein, make no changes in the definition or classification of separate or common property, as provided for in Civ. Code art. 2334. The husband, prior to the passage of Act No. 186 of 1920, and Act No. 170 of 1912, as the head of the community, had always been recognized as having the authority or power to sell or mortgage the community property without the consent of his wife. Civ. Code, art. 2404; Hennen's Digest, vol. 1, p. 888. The provision on which counsel rely in Act No. 186 of 1920 was enacted for the purpose, when the title to community property stands in the name of the wife, to prohibit the husband from selling or mortgaging it without her consent or authority in writing. It was enacted as a restriction to the power previously exercised by the husband under the laws governing the community of acquêts and gains. The very wording of that clause in those acts indicates that such was the legislative purpose.

The broadest of the "Married Women Acts" is Act No. 283 of 1928, p. 548.

That act, as appears from its liberal provisions, was enacted to relieve married women from all of their former disabilities and incapacities. Section 5 of that statute says, however, that nothing it contains shall affect or modify the laws relating to the matrimonial community. Though the act, referred to by counsel, says the husband must have the written consent of his wife to sell or mortgage the community property when in her name, still, when such authority is given by the

wife, it is implied by the very language of the act that the husband will grant the mortgage or make the sale. It is then by his act that the transfer is made or the mortgage granted, to which his wife, in such a case, consents.

Article 122, Civ. Code, reads: "The wife, even when she is separated in estate from her husband, can not alienate, grant, mortgage, acquire, either by gratuitous or incumbered title, unless her husband concurs in the act or yields his consent in writing."

The provisions of that article are repealed by Act No. 283 of 1928, in so far as it grants to a married woman the right to make any contract relating to her property, independently of the authority of her husband or of the judge. This act does not, however, dispense with the necessity of the authorization of the husband for the transfer of community property. That article (article 122, Civ. Code), in part, says she cannot alienate or mortgage property, etc., "unless her husband concurs in the act or yields his consent in writing." This portion of the article still prevails in reference to the assignment of community assets, particularly of immovables.

The act of sale from Mrs. Marie Louise Pucheu to Francis Coreil, opponent, is not signed by J. M. Coreil, her husband, and who did not concur in the act or yield his consent in writing, and it is not claimed by counsel for opponent that J. M. Coreil concurred in the act or gave his consent thereto in writing. Their position is that Mrs. Pucheu Coreil had the verbal consent and authority of her husband to make the sale at the time of its execution and that they had the right to establish that fact by parole evidence.

On the trial of the case, counsel for opponent, proceeding on that theory, asked the husband, J. M. Coreil, to please state whether or not his wife had his consent and authority to make that sale to intervener. He answered, as follows: "Yes sir, that was her separate property and I had no objection whatever to her making that sale." Timely objection was made to the introduction of that evidence by counsel for the bank, on the ground that the parole evidence offered was inadmissible. The objection was overruled by the court, and the testimony was admitted.

Counsel for opponent contends that the exclusion of parole evidence in such a case was established in favor of the husband, and that his admission that he had authorized his wife to make the sale was admissible and binding.

In passing on the exclusion of testimonial proof to establish conventional interest, the court, in Delacroix v. Prevost's Ex'rs, 6 Mart. (O. S.) 276, said, a party might confess he had agreed to pay conventional interest at the rate demanded or could tacitly admit it by forbearing to enter a denial.

It is the contention of counsel for intervener that they are not endeavoring to show the authorization to the wife by ordinary parole which would perhaps be inadmissible; that the authorization is proved by the sworn admission of the husband, who could alone object, as the rule against parole evidence is, in such a case, established in his favor.

In his petition, intervener avers that the property was bought from Mrs. J. M. Coreil with the express consent of her husband. Such express authorization is not a confession, and cannot be assimilated to the admission of a debt by parole under the doctrine announced in the Delacroix Case relied on by counsel for intervener.

When asked if the sale by his wife had been made with his consent and authority, J. M. Coreil answered: "Yes sir; that was her separate property, and I had no objection to her making that sale."

Evidently, J. M. Coreil was laboring under a misconception as to the character of that property. It is obvious from his answer that he was under the impression that the property belonged to his wife, and he did not urge any objection to its transfer by her. As he saw the situation his consent or authority was not needed and he merely did not object to the sale. Had he known the property was community, it may be that he would have objected. This statement that it was her separate property and that he had no objection to her making the sale, was certainly not an express authorization on his part conferred on his wife to make a sale of community property.

Counsel for opponent refers to the Delacroix Case, 6 Mart. (O. S.) 276, where he says, parole evidence was admissible to show the rate of conventional interest by implication because the party tacitly admitted it or failed to deny.

■ In this case, if it can be brought under the doctrine announced in that case, the ruling therein made could not apply because it is nowhere implied in the answer of J. M. Coreil to the question propounded to him that he had authorized his wife to sell the property in question as being community property. Conceding that the parole evidence was admissible as contended for by counsel for intervener, it cannot avail him as it fails to show that any authority, either express or implied, was conferred on Mrs. Marie Louise Pucheu Coreil by her husband to sell this community property.

■ In addition to the foregoing, it must be stated, as observed in the beginning of this opinion, that third opponent did not allege and introduced no proof to show that the paraphernal funds which the deed from J. Robley Coreil to Mrs. Marie Louise Pucheu Coreil declares were used by her in purchasing were under her separate administration at the time

of her purchase. In default of such proof, the law is, that such an acquisition being made during marriage falls into the community.

This property was bought by her in August, 1929, and was a community asset. The judgment of the bank was recorded July 12, 1930. The property being community, the wife had no title therein and could become half-owner only after the dissolution of the marriage. It became subject to the judicial mortgage of the bank resulting from registry of its judgment though the debt had been that of the husband, individually. Guice v. Lawrence, 2 La. Ann. 226. There was no alienation of its ownership by the wife for lack of authorization by the husband; and, even if there had been a legal transfer of title by the wife to third opponent, there would have been no change in the character of the property deeded, which remained encumbered with the judicial mortgage of the bank recorded prior to the acquisition of that community asset. The fact that the sale to opponent was effected three or four days before the seizure by the bank does not affect the situation.

The judgment in favor of intervener must therefore be reversed, and the seizure by the bank maintained.

It is therefore ordered, adjudged, and decreed that the judgment in favor of intervener be reversed, avoided, and annulled, and that his demand be rejected at his cost; that the store building seized under the writ and claimed by third opponent be sold to pay the bank, seizing creditor, with costs, but not the movables for which intervener entered a disclaimer of title in his intervention.