PONDER, Justice.
 

 This is a proceeding by rule against the Federal Land Bank to subordinate its mortgage to plaintiff’s judgment against Thomas W. Montgomery.
 

 Mrs. Edna Innis Montgomery, on November 8, 1922, executed a mortgage on two certain tracts of land (containing 269.22 acres, 215.97 acres, respectively) to the Federal Land Bank for the sum of $10,000. It was recited in the mortgage that. the property was acquired by Mrs. Edna Innis Montgomery from her deceased father, James Innis, partly by inheritance, partly by purchase from Mrs. Mary Margaret Innis, and by act of partition between Mrs. Edna Innis Montgomery and her coheirs. The act of mortgage was signed by Edna Innis Montgomery and Thomas W. Montgomery, filed for record November 8, 1922, and recorded in Book 1, page 159 et seql, in the mortgage records of Point Coupee parish.
 

 Norman Mayer & Co. obtained a judgment (which is recorded in Book 29, Entry No. 491, on October 18, 1923, in the mortgage records of Point Coupee parish) against Thomas W. Montgomery for the-sum of $8,270.11, with legal interest from judicial demand, in the district court of Point Coupee parish on October 18, 1923. The judgment was revived by judgment of ■the same court, October 18, 1933, and was duly recorded.
 

 On March. 10, 1932, prior to the suit herein, the plaintiff sought to execute the above-mentioned judgment on an undivided one-half interest in the property recited in the mortgage by causing a writ of fi. fa. to issue. When the sheriff seized the undivided one-half interest and advertised it for sale, Mrs. Edna Innis Montgomery instituted suit against the plaintiffs and sheriff enjoining the sale on the ground that the property seized was her separate paraphetnal property and it could not be seized for a community debt. This suit bears No. 32,664 of the docket of this court and is entitled Mrs. Edna Innis Montgomery v. Lamertine Bouanchaud et al., 179 La. 312, 154 So. 8. In that suit, this court decreed the undivided one-half interest in the property to be community property.
 

 The plaintiff brought the present rule against the Federal Land Bank to subordinate the mortgage of the Federal Land Bank to plaintiffs’ judgment against Thomas W. Montgomery as to the undivided one-half interest in the lands, de
 
 *377
 
 creed in suit No. 32,664 of the docket of this court to be community property. After trial on the merits, plaintiff’s rule was dismissed and plaintiff appealed to this court.
 

 Plaintiff states in its brief on page 5 that there is'no provision in the mortgage to the Federal Land Bank to explain the signature of Thomas W. Montgomery, ex•cept the provisions, viz.:
 

 “The said Edna Innis Montgomery declared that in favor of the mortgagee herein, and of all future holder or holders of the said note secured hereby, and as ■ regards the property hereby mortgaged she waives any and all homestead exemptions to which she is or may be entitled under the Constitution of the State of Louisiana.
 

 “An'd now to these presents intervened Mrs.-herein duly authorized by her husband, who declared that she hereby joins her husband in the waiver of homestead exemptions hereinabove stipulated.”
 

 The plaintiff contends, as the mortgage was executed in a printed form ordinarily used where a husband might be executing such an act, that the notary failed to change the printed form so as to substitute Mr. Montgomery’s name in the vacant space ordinarily used to fill in the name of the wife and that, manifestly, the only object the defendant bank had in requiring Mr. Montgomery to sign the act of mortgage was to carry out the usual practice of requiring the other spouse to sign to waive the homestead.
 

 The lower court, in its reason for judgment, stated that, at the. time the mortgage was given to the Federal Land Bank, Mr. and Mrs. Montgomery were not living on the property mortgaged and, in fact, they had never lived on it. Finding no error in this ruling of the lower court, we see no necessity for a homestead waiver. In fact, the name of Thomas W. Montgomery was not filled out in the blank space provided for the person who intended to waive the homestead rights The signature of Thomas W. Montgomery was not qualified or restricted.
 

 Under the provisions of Act No. 170 of 1912, p. 310, when the title to community property stands in the name of the wife, it cannot be i mortgaged or sold by the husband without her written authority or consent. Since the wife and husband both signed the instant mortgage on the undivided one-half interest decreed to be community property, it would be binding.
 

 Under Act No. 244 of 1918, p. 435, as amended by Act No. 219 of 1920, the wife can mortgage her separate and paraphernal property without the authority of the husband. Therefore, at the time this mortgage was given to the Federal Land Bank, there was no necessity for the husband to sign to authorize the wife.
 

 To give effect to defendant’s contention that the husband signed the act of mortgage to authorize the wife, we would have to read into the act of mortgage something that is not contained therein. To give effect to defendants’ contention that the husband signed the act of mortgage
 
 *379
 
 to waive the homestead rights, we would have to read a vain and useless stipulation into the act of mortgage. To construe the signature of Thomas W. Montgomery to the act of mortgage in the light of plaintiff’s contention, that it was to authorize his wife or to waive the homestead rights, would be equivalent to giving the husband’s signature a vain and useless meaning.
 

 In the instant case, the conveyance records show that Mrs. Montgomery acquired an interest in these lands by inheritance from her deceased father and that, during the community between her and her husband, she obtained other interest in the property by purchase and by act of partition between the coheirs. We could see no reason for the Federal Land Bank to require the husband to sign the act of mortgage except to bind the husband in event the interest acquired by Mrs. Montgomery during the community might be community property. In that event, the Federal Land Bank’s loan would be secured. We cannot go beyond the act and infer that the husband signed it for a vain and useless purpose. Although there was no necessity to sign the act of mortgage to authorize his wife, if it had been his intention to sign it for that purpose, he should have stated in the act of mortgage or under his signature. If he had intended to sign the act of mortgage for the purpose of waiving the homestead rights, which was a vain and useless purpose, he should have so stated. We cannot infer that persons would sign an authentic act for a vain and useless purpose. The Federal Land Bank in this case made a loan on the property in the sum of $10,000. This court cannot infer that the Federal Land Bank would have loaned this amount of money on this property when it shows on the very face of the conveyance records that there was a question of whether the undivided interest purchased during the community was community property or the separate and paraphernal property of the wife. Naturally, the Federal Land Bank, desiring its loan to be secured by a mortgage on this property, would require the owners of record to sign the act of mortgage. Since the records show that an interest in this property was acquired during the community, it would be only reasonable that the bank would require the husband to sign the act of mortgage.
 

 In the case of Joseph Monget v. Joseph Penny et al., 7 La.Ann. 134, this court-stated :
 

 “It is contended, that in signing this note Penny did not bind himself, but merely gave his authority to his wife to bind herself. We are of a different opinion. Penny having affixed his signature to the note without any qualification or limitation, must be considered as contracting a personal obligation. If he merely intended to authorize his wife to bind herself, he should have so written, according to the uniform usage in such cases. He bound himself, by his signature, as a promissor, and is responsible in solido with his wife on the note. It reads, as to him, I promise, &c., and does not imply a joint obligation, as if the plural, we promise, was made use of.”
 

 
 *381
 
 Since it has been decided in the above case that the husband was bound in solido by signing the note, it would necessarily follow that, where a husband signed the act of mortgage to secure the note of his wife, he would be bound as a mortgagor.
 

 The plaintiff cites in its brief the case of the First Nat. Bank of Ville Platte v. Coreil, 145 So. 395, Court of Appeals, First Circuit, in support of its contention that, if the parties believed this to be the separate property of the wife, the effect of the husband’s signature must be restricted. In that case, the court held that, when the title of the community property stands in the name of the wife, the husband cannot mortgage or sell it unless the wife concurs in the act or yields her consent in writing. The Federal Land Bank had a right to rely upon the records, and since the records themselves show that there might be some question as to whether the interest in the lands acquired during the community might be community property, it was only natural for the bank to require the husband to sign the act of mortgage in order to secure its loan.
 

 Therefore, we conclude that the effect of Thomas W. Montgomery’s signing the act of mortgage was to make himself a party to the act for all purposes for which his signature might have been necessary to mortgage the property to secure the loan of the Federal Land Bank.
 

 For the reasons assigned, the judgment of the lower court is affirmed at plaintiff’s cost.