ODOM, Justice.
 

 Plaintiff prosecutes this appeal from a judgment rejecting its demands for a deficiency judgment against Joseph S. Bruno, the husband of Mrs. Eulalie Eleanore Anglada Bruno.
 

 On June 22, 1927, application was made to the Orleans Homestead ■ Association (now the Investors Homestead Association) for a loan of $2,500 on certain real property, located at 2355 N. Villere Street in the City of New Orleans, the application being signed by “Mrs.-J- Bruno and J. S. Bruno”. The application was approved in April, 1928. The property offered as security for the loan belonged to Mrs. Bruno, who had acquired it by inheritance. The loan was consummated on April 26, 1928, according to the rules and regulations adopted by the Homestead Association. Mrs. Bruno sold the property to the Homestead Association, and it in turn transferred it back to her, retaining the vendor’s privilege and special mortgage on the property to secure the note for $2,500, representing the amount of the loan.
 

 A copy of the act of sale and mortgage and a copy of the note are in the record. The act recites that the property is sold “unto Mrs. Eulalie Eleonore Anglada, wife of Joseph S. Bruno, herein authorized and assisted by her said husband”. This act of sale and mortgage is signed as follows :
 

 “J. H. LaBesque, Pres.
 

 “Mrs. J. S. Bruno
 

 “To authorize my wife
 

 “J. S. Bruno”
 

 The note for $2,500 was signed- as follows :
 

 “Mrs. J. S. Bruno
 

 “To Authorize my wife
 

 “J. S. Bruno”
 

 The loan was not paid, and the property was sold under executory process in 1933, for $300, or $2,551.90 less than the amount due.
 

 
 *699
 
 The' present suit was filed by the Homestead Association on November 15, 1933, against the husband and the wife, to recover the balance due on the note.
 

 Plaintiff alleged that it was the owner of the note which was executed and signed by said parties and paraphed by a notary, “to identify it with an Act of Sale and Chattel Mortgage on April 26th, 1928 wherein your petitioner sold and conveyed certain property to Mrs. Eulalee Eleanore Anglada, wife of Joseph S. Bruno and the said Joseph S. Bruno”.
 

 In a supplemental and amended petition, plaintiff alleged that “said property by reason of the purchase being made during the community was community property, and the debt contracted on account of said purchase price was and is a community debt for which the husband, the said Joseph S. Bruno, is liable in solido with his said wife”.
 

 Judgment went against Mrs. Bruno by default. But Joseph S. Bruno, the husband, filed answer, in which he denied any indebtedness to plaintiff, denied that the property mortgaged to secure the debt became community property by virtue of his wife’s sale thereof to plaintiff and its resale to her, and denied that the amount claimed is a community debt.
 

 The judgment appealed from is correct. There is nothing in the record that shows, or even indicates, that Joseph S. Bruno, the husband, was bound with his wife for the indebtedness to the Homestead Association. True, he signed the act of sale and mortgage and the note, but he did so for the sole purpose of authorizing his wife. This is shown by the instruments themselves. His signature is qualified by the words “To authorize my wife”.
 

 Mr. Bruno testified, and his testimony is not disputed, that the notary before whom the mortgage and the note were executed required him to join in the proceeding to authorize his wife, and that he did so for that purpose alone.
 

 As we have stated, the property mortgaged to secure the loan was the separate property of the wife, 'who acquired it by inheritance. Counsel for the Homestead. Association knew this, and the documents filed in evidence show to our entire satisfaction that the officers of the Homestead Association understood from the beginning, not only that the property belonged to the wife, but that the debt contracted was her debt and not the debt of the husband.
 

 The application for the loan was signed by both the wife and the husband. But underneath their signatures is the iollowing memorandum:
 

 “Q. Age? 35
 

 “Q. Occupation ? Housewife
 

 “Q. Married? Yes”
 

 This indicates very clearly that those who prepared- this document understood that it was the wife who requested the loan.
 

 The act of sale and mortgage recites that the property is sold unto Mrs. Bruno, “wife of Joseph S. Bruno, herein authorized and assisted by her said husband”. In the act of sale, from the beginning to the end of it, there are expressions which
 
 *701
 
 show that the property was sold to the wife and that the debt was the wife’s debt. We find such expressions as the following in that instrument:
 

 “Here present, purchasing and accepting for herself, her heirs and assigns” ■ “which the purchaser binds and obligates herself, her heirs and assigns not to sell” “by reason of failure or neglect on her part to pay interest”
 

 “she shall have the right to transfer to the Association her stock”
 

 “binds and obligates herself to keep the buildings * * * insured”
 

 “who moreover binds herself in case”
 

 “said property and appurtenances unto the said purchaser, her heirs and assigns”
 

 “said purchaser binds' and obligates herself to pay punctually”
 

 The pass-book used in connection with the loan was made out in the name of the wife alone. Furthermore, the foreclosure proceeding was against the wife, and not against the wife and the husband. Plaintiff alleged that it was the holder and owner of a certain promissory note “made and subscribed by defendant Mrs. Eulalie Eleanore Anglada, wife of Joseph S. Bruno, a person of the full age of majority”. In Paragraph 2 of the petition, it is alleged that plaintiff had retained a vendor’s lien and that “defendant Mrs. Eulalie Eleanore Anglada, wife of Joseph S. Bruno, granted a special mortgage and vendor’s privilege” on said property. And it is further alleged in Paragraph 3 that, in order to secure still further the purchaser’s said indebtedness, she gave in pledge to said association “all her 25 shares of the capital stock of said Association standing in the purchaser’s name”. The notices of demand to pay and of the seizure of the property were addressed “To Mrs. Eulalie Eleanore Anglada, wife of Joseph S. Bruno”, and according to the sheriff’s returns were served on Mrs. Bruno alone.
 

 Apparently, plaintiff’s effort to hold the husband for this indebtedness was an afterthought and was based upon the assumption that, since the property was transferred to Mrs. Bruno by the Homestead Association during the existence of the community, it became community property and the .debt of $2,500 was a community debt. It was so alleged in plaintiff’s amended petition in the present suit. However, counsel for plaintiff have abandoned that theory, because in their brief at page 4 they say: “This property did not become community property by the sale and resale”; citing Mayre v. Pierson et al., 171 La. 1077, 133 So. 163. If, as a matter of law, the property had fallen into the community, as plaintiff alleged, the husband would be bound. But counsel for plaintiff have shifted their position. They now argue that, in as much as it was not necessary for the husband to authorize his wife, under the acts of the Legislature granting to married women the right to mortgage or sell their separate property without the authorization of their husbands, the very fact that the husband did sign the instruments shows that he intended to bind himself.
 

 There is no merit in this contention, for two reasons. The first is that the husband very definitely qualified his signature “To
 
 *703
 
 authorize my wife”. The second is that Mr. Bruno testified without contradiction that the notary required him to join in the instruments to authorize his wife.
 

 Taking judicial cognizance of our own opinions, we know that for a considerable time after the adoption of the so-called “Emancipation Acts”, relating to the authority conferred upon married women, there was considerable confusion and doubt in the minds of the members of the Bar as to the exact meaning of those acts, and for* that reason it was deemed advisable to have husbands authorize their wives in transactions of this kind. It was suggested in árgument by counsel for Mr. Bruno, and not disputed by counsel for plaintiff, that some' of the homestead associations still require husbands to authorize their wives in transactions of this kind.
 

 Counsel for plaintiff offered in evidence a letter written by Mr. Bruno on June 12, 1932, addressed to the secretary of the Homestead Association, which reads in part: “I thought I would write you, and explain matters, I expect to receive Twenty dollars on or about June 17th, I will add some to this and turn it over to you, I have been unable to make payments to you lately,” etc.
 

 Counsel for defendant objected to the introduction of this letter, but his objection Was overruled, and the letter was filed. The letter was admissible for the purpose for which it was offered, which was to prove a subsequent, new, and independent agreement, and not to vary or alter the. terms of the original mortgage note or act of sale. Parlor City Lumber Co., Inc., v. Sandel, 186 La. 982, 173 So. 737; Salley v. Louviere, 183 La. 92, 162 So. 811. Those cases related to the introduction of parol testimony for the purpose of establishing a new or subsequent agreement, and it was held that such testimony is admissible for that purpose. If parol testimony is admissible for such purpose, then a writing in the form of a letter is admissible for that purpose.
 

 But, as a matter of fact, the letter introduced in this case does not indicate that Mr. Bruno intended to vary, alter, or modify the original agreement in any sense, nor does it indicate that he intended to assume the debt or bind and obligate himself for its payment. It recites that he had intended, and still intended, to make payments on the loan, and states his reasons for not doing so. The letter, having been admitted, was subject to explanation by the writer. He testified that he had made all the payments on the loan as agent for his wife. Instead of his wife’s going to the office of the association and making the payments personally, he had done so for his wife, as her agent. This letter, thus explained, cannot be held to be an assumption of a debt, or to mean that Mr. Bruno intended to make a new agreement or to modify the original contract.
 

 If Mr. Bruno had signed the note without qualifying his signature, a different situation might be presented. But he did qualify his signature, as is the custom where husbands sign to authorize their wives. Joseph Monget v. Joseph Penny et al., 7 La.Ann. 134; cited with approval m Nor
 
 *705
 
 man Mayer & Co. v. Montgomery, 187 La. 374, 174 So. 880.
 

 The judgment appealed from is affirmed.
 

 PONDER, J., absent.