307 So.2d 569 (1974)
Mary Emma Key TORREY
v.
SIMON-TORREY, INC.
No. 54199.
Supreme Court of Louisiana.
April 29, 1974.
On Rehearing December 2, 1974.
*570 Leon E. Roy, Jr., Cicero C. Sessions, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, for defendant-applicant.
William O. Bonin, Landry, Watkins, Cousin & Bonin, New Iberia, for plaintiff-respondent.
MARCUS, Justice.
Mary Emma Key Torrey, as surviving spouse in community of John Torrey, instituted executory proceedings to foreclose against the property owned by Simon-Torrey, Inc.[1] Plaintiff claimed failure of the defendant to pay the amounts due on eight vendor's lien and special mortgage promissory notes, aggregating the sum of $14,555.20, with interest thereon at the rate of 5% per annum from October 1, 1955. After seizure of the property, Simon-Torrey, Inc. sought an injunction to arrest the seizure and sale of its property. It was granted a temporary restraining order, and a rule nisi issued.
A subsequent plea of estoppel was filed by Simon-Torrey, Inc., and it also petitioned the court for a declaratory judgment seeking a complete discharge and extinguishment *571 of said notes by tender and deposit in the registry of the court of $4,555.20, representing the alleged remitted and reduced value of the notes sued upon.
At the trial of this matter, Simon-Torrey, Inc. sought to introduce parol evidence as proof of the remission of this debt. Objection was made. The evidence was allowed subject to the objection.
The trial court rendered judgment in favor of plaintiff on four of the notes (Nos. 22, 26, 30 and 34) but granted a preliminary injunction as to the other four notes (Nos. 38, 42, 46 and 50) based upon a finding of prematurity. Defendant's plea of estoppel was denied.
Simon-Torrey, Inc. appealed and also asserted a plea of prescription as to note No. 22. The Court of Appeal affirmed in regard to the enforcement of notes numbered 26, 30 and 34, but reversed and amended to allow the enforcement of notes numbered 38, 42, 46 and 50. The enforcement of note No. 22 was disallowed as being prescribed. La.App., 284 So.2d 130. Simon-Torrey, Inc. applied to this Court for a writ of review which was granted. We affirm the judgment of the Court of Appeal.
The primary issue concerns the effect to be given an agreement entered into by Warren M. Simon, John Torrey and Simon-Torrey, Inc. resulting from a tax settlement with the Internal Revenue Service in 1959. It was this agreement and its resulting changes on the books of Simon-Torrey, Inc. which is claimed by the defendant to constitute a remission of the face value of the mortgage notes herein sued upon.
Warren M. Simon and John Torrey were the sole partners in a creamery business. On October 1, 1955, Simon and Torrey transferred the partnership assets (which included the real estate subject to the present foreclosure proceedings) to the newly formed corporation, Simon-Torrey, Inc. The form of the transfer was by notarial act. The recited consideration was $256,746.71 which was represented in part by fifty promissory notes. Torrey received twenty-five even-numbered notes, and Simon received twenty-five odd-numbered notes. The Torrey notes were in the face amount of $1,819.40 each, whereas, the Simon notes were for $7,277.60 each. All notes provided for interest at the rate of 5% per annum from date until paid. The notes were further secured by a special mortgage and vendor's lien on the property herein foreclosed upon. The face value of the notes received by each partner was in keeping with their proportionate interest in the former partnership of Simon and Torrey in which Simon owned 80%, and Torrey owned 20%.
In 1958, the Internal Revenue Service (hereinafter referred to as IRS) questioned the aforesaid transfer of partnership assets by the partners to defendant corporation. An attorney was retained to represent the individual partners, the partnership and the corporation in this matter. It appears that the primary complaint of the IRS was that the debt-capital ratio of Simon-Torrey, Inc. created a "thin" corporation. This would have resulted in serious tax consequences. Negotiations followed, and a settlement was worked out in which Simon-Torrey, Inc. was accepted as a corporate entity. Among other things, it was required that the sales price of the property transferred and the notes payable by the corporation to Simon and Torrey be reduced by $100,000.00. Also, accrued interest as well as future interest was disallowed.
The evidence is clear that the settlement was accepted by all of the parties. In regard to Simon-Torrey, Inc., this is indicated by a resolution of the Board of Directors approving the tax settlement which specifically included a reduction in the sale price of the assets sold by Simon and Torrey to the corporation by the sum of *572 $100,000.00 and a corresponding reduction of the promissory notes held by Simon and Torrey as part of the consideration they received for the sale of said assets. In accordance therewith, the books and records of the corporation, Simon-Torrey, Inc., as well as its financial statements, were changed to reflect the agreed-upon modifications.
Although the resolution of Simon-Torrey, Inc. authorized the execution of appropriate instruments to carry into effect the said tax settlement, no agreements were in fact confected, and the face value of the notes remained unchanged in spite of the decrease in the value of these notes on the books of the corporation.
Simon-Torrey, Inc. urges that the reduction in the purchase price and the amount due on the notes held by Simon and Torrey, as a result of the tax settlement with IRS and the subsequent resolution of the corporation and the changes on its books and financial statements in accordance therewith, constitutes clear and convincing evidence that all parties agreed that the purchase price, as well as the amount due on the notes, would be reduced by $100,000.00 and interest would be remitted. Accordingly, it contends the parol evidence introduced at trial was admissible to show this subsequent agreement in regard to remission of the face value of the notes.
Plaintiff, Mrs. Torrey, as surviving spouse in community of John Torrey, and owner of one-half of the notes held by Torrey at the time of his death, contends that, under the well-established rule of Article 2276 of the Civil Code, parol evidence cannot be admitted to alter the provisions of an authentic act of sale and mortgage of land by showing a reduction of the purchase price recited therein. Since Simon-Torrey, Inc. did not allege the existence of a competent written agreement modifying the act of sale to the corporation, it is plaintiff's position that parol evidence cannot be considered in support of its defense to this foreclosure proceeding.
At the outset, it must be observed that parole evidence is not admissible to vary the terms of the written sale agreement of October 1, 1955. This sale, being one involving immovables was required to be in writing under the provisions of Article 2275 of the Civil Code. Article 2276 forbids the introduction of parol evidence "against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since."
No claim is made that there was fraud, error, mistake or ambiguity in the contract of October 1, 1955 for which the notes here in question were issued. Simon-Torrey, Inc. relies upon a subsequent agreement.
The landmark case of Salley v. Louviere, 183 La. 92, 162 So. 811 (1935) recites the conditions under which a written contract may be varied by parol evidence:
"Article 2276 of the Civil Code declares that parol evidence shall not be admitted against or beyond what is contained in a written contract, nor on what may have been said before, or at the time of making the contract, or since. This article of the Code is not to be construed so as to forbid the proving by parol evidence of a subsequent agreement modifying or abrogating a written contract of a character which the law does not require to be in writing. It is true that the article says that parol evidence shall not be admitted to prove what may have been said by the parties to a written contract, before or at the time of making the contract, or since. But the meaning is that parol evidence as to what the parties to a written contract may have said at any time shall not be admitted for the purpose of proving that they had an antecedent *573 or a contemporaneous agreement contrary to that which was reduced to writing. The words `or since' have reference to the phrase `what may have been said,' and not to what may have been agreed to, since the making of the written contract. It is well settled that this article of the Civil Code does not forbid the proving by parol evidence of a subsequent agreement to modify or to revoke a written agreement. Commandeur v. Russell, 5 Mart. (N.S.) 456, 459; Bouligny v. Urquhart, 4 La. 29; Knox v. Liddell, 5 Rob. 111, 112; Jamison v. Ludlow, 3 La.Ann. 492, 493; Leeds & Co. v. Fassman, 17 La.Ann. 32; Cain v. Pullen, 34 La.Ann. 511, 517; Cary v. Richardson, 35 La.Ann. 505, 510; Story v. Hope Insurance Co., 37 La.Ann. 254, 258." (Emphasis ours)
Later cases of this Court, as well as the courts of appeal, explain that the ruling in Salley v. Louviere, allowing proof by parol evidence of a subsequent agreement to modify or to revoke a written agreement, is not applicable to a case in which the agreement is one required by law to be in writing. DiCristina v. Weiser, 215 La. 1115, 42 So.2d 868 (1949); Davidson v. Midstates Oil Corporation, 211 La. 882, 31 So.2d 7 (1947); Arkansas Louisiana Gas Co. v. R. O. Roy & Co., 196 La. 121, 198 So. 768 (1940); Conklin v. Caffal, 189 La. 301, 179 So. 434 (1938); In re Industrial Homestead Ass'n., 198 So. 528 (La.App.1940).
We are not unmindful that there are some cases to the contrary;[2] however, we consider the sounder view is that expressed in the above cited cases.
We, therefore, conclude that the parol evidence adduced was not admissible to show a new, independent and subsequent agreement of this contract of sale, required by Article 2275 of the Civil Code to be in writing.
However, even assuming that the parol evidence was admissible to prove a subsequent agreement in this case, we do not find the evidence sufficiently establishes that the parties ever intended to reduce or remit the debt incurred by the corporation in its acquisition of the partnership assets. Rather, we are convinced that the entries made in the books of the corporation, as well as the other corporate action showing a decrease in the purchase price of the assets acquired and the notes payable to Simon and Torrey, were done to comply with the tax settlement with IRS and did not reflect the intention of the parties to remit or reduce the debt between the corporation and the holders of the notes. In other words, it was done for tax purposes only. This conclusion is supported by subsequent events following the tax settlement with IRS. Eight notes were paid Mr. Torrey prior to his death in the exact principal amount shown to be due on the face of the notes even though admittedly no interest payment was made. Additionally, there was introduced into evidence several memoranda written by Mr. Simon, president of defendant corporation, all of which were written subsequent to the death of Mr. Torrey in 1966, which memoranda clearly indicate that at least at that time, subsequent to the death of Mr. Torrey, there was no understanding that the value of the notes had been reduced.
Defendant corporation asserted an alternative plea of estoppel to preclude plaintiff's collection of the full face value of the notes, plus interest. Initially, if the evidence is incompetent to establish an agreement to vary the provisions of a sale of land, then it is likewise incompetent to defeat plaintiff's right of recovery under *574 the terms of said sale agreement. If we were to hold otherwise, it would allow defendant to do indirectly that which it cannot do legally and directly. In any event, we are unable to see where Mrs. Torrey was unjustly enriched. She is only collecting that to which she is legally entitled. Her deceased husband transferred to defendant corporation his interest in certain assets for a fixed consideration, part of which is represented by the notes herein sued upon. Further, we have found no written agreement or subsequent verbal agreement on the part of plaintiff or her deceased husband to remit or reduce the amount due on said notes. Reference is made to the fact that the executor of the succession of John Torrey sold the stock in the corporation to the corporation for $15,543.00 and that this stock would not have had any value had the purchase price and notes payable not been reduced on the books of the corporation. Thus, it is argued that Mrs. Torrey was enriched to the detriment of the other stockholders. This issue is not involved in the instant foreclosure proceedings. The true value of the stock, the terms of any obligation of the corporation to purchase the stock of a deceased stockholder, etc. were not explored during the trial of this matter. While this might well be the subject of future litigation, it is not at issue in this foreclosure proceeding. Thus, we conclude defendant has failed to establish its plea of estoppel.
The Court of Appeal held that note No. 22 had prescribed. This note was issued on October 1, 1955 and was made payable on or before eleven years after date. It matured on October 1, 1966, and the prescription of five years began to run against the note from that date (Article 3540 C.C.). However, on December 2, 1966, a tender was made by letter which served as an acknowledgment of the debt and thereby interrupted the running of prescription. This extended the life of the note until December 2, 1971 when the note prescribed. Further, there was no effective renunciation of the accrued prescription by defendant debtor. Accordingly, the Court of Appeal was correct in its ruling that note No. 22 had prescribed.
Finally, Simon-Torrey, Inc. challenges that portion of the Court of Appeal judgment which reversed and amended the judgment of the trial court so as to allow enforcement of notes Nos. 38, 42, 46 and 50. It is urged that these notes could not be enforced due to the absence of an acceleration clause in either the credit sale or the promissory notes paraphed thereto. There is no substance to this contention. The credit sale does contain an acceleration clause. Further, the presence of an acceleration clause in the act of credit sale alone to which the notes are paraphed is sufficient. Gaines v. Bonnabel, 168 La. 262, 121 So. 764 (1929). Thus, the indebtedness secured by the mortgage herein became immediately due and payable as a result of non-payment as required in the act of credit sale. This constituted a breach of one of the covenants upon which acceleration was conditioned.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.
BARHAM, J., dissents with reasons.
TATE, J., joins in Mr. Justice BARHAM's dissent and assigns additional reasons.
CALOGERO, J., dissents.
TATE, Justice (dissenting).
The writer respectfully dissents, essentially for the reasons stated by my brother BARHAM.
*575 The essential legal principles stated by the Civil Code are that "every transfer of immovable property must be in writing * * *", Article 2275, so that parol evidence may not be admitted "against or beyond what is contained in the acts * * *." Likewise a promise to sell an immovable may not be enforced unless it is in writing. Article 2462. The underlying reasons relate to the special sanctity of immovable property in our system of values and the general necessity for stability of title to land.
These underlying principles do not pertain to subsequent independent agreements by which the holder waives interest and part or all of the principal due on promissory notes. If these notes had not been given as part of the purchase price of immovable property, then the majority admits that parol evidence was admissible to prove the subsequent independent agreement varying the effect. Salley v. Louviere, 183 La. 92, 162 So.2d 811 (1935). Solely because these mortgage notes relate to (but are not part of, incidentally) an act transferring immovable property, does the majority hold that parol evidence is not admissible.
The majority itself admits that this holding is contrary to at least three prior decisions of this court, never until now overruled: Tholl Oil Co. v. Miller, 197 La. 976, 3 So.2d 97 (1941); Investors Homestead Assn. v. Anglada, 193 La. 596, 192 So.2d 69 (1939); Parlor City Lumber Co. v. Sandel, 186 La. 982, 173 So. 737 (1937).
I see no reason to overrule these cases, which I believe to represent the better view: The policy of the code articles is designed only to prevent the use of parol evidence to take away title to immovables, or the use or parol evidence to confer title to immovables. It does not include within its compass any arbitrary prohibition of the use of parol evidence to prove independent later agreements, relating to mortgage notes or interest due thereupon.
With regard to the factual finding of the majority, based on the parol evidence, that the parties did not intend to remit the debt or reduce the price (which finding is either dicta, or else makes dicta the holding that parol evidence to this effect is inadmissible), I can only say that the apparent factual finding of the intermediate court is that the parties intended to remit the debt (reduce the price), but that the courts could not give effect to this intention because of the parol evidence prohibition.
I therefore respectfully dissent.
BARHAM, Justice (dissenting).
The majority has gone to great lengths in this opinion to make a gratuitous statement that proof by parol evidence of a subsequent agreement to modify or revoke a written agreement is not permitted. After its lengthy dictum in regard to this legal proposition, the majority finds the parol evidence establishes that the parties never intended to reduce or remit the debt which is the subject of this lawsuit.
John Torrey, now deceased, and Warren M. Simon, who were the sole partners in a creamery business, transferred the partnership assets including the real estate which is the subject of the foreclosure proceedings here, to a newly formed corporation, Simon-Torrey, Inc. The recited consideration in the notarial act of transfer was $5,000.00 cash and a credit balance of $256,746.71 represented by promissory notes. Notes were executed for the unpaid balance to Simon and to Torrey, bearing interest at the rate of 5% per annum. All of this occurred in 1955. In 1958, the Internal Revenue Service found Simon-Torrey, Inc. to be a "thin corporation" and ordered corporate revisions for tax purposes.
Negotiations between the IRS, Simon, Torrey and Simon-Torrey, Inc. resulted in a settlement between all parties. The settlement *576 required among other things that the sale price of the property transferred from the partnership to the corporation be reduced by $100,000.00, and that all interest be disallowed on the notes payable.
The majority has found:
"The evidence is clear that the settlement was accepted by all of the parties. In regard to Simon-Torrey, Inc., this is indicated by a resolution of the Board of Directors approving the tax settlement which specifically included a reduction in the sale price of the assets sold by Simon and Torrey to the corporation by the sum of $100,000.00 and a corresponding reduction of the promissory notes held by Simon and Torrey as part of the consideration they received for the sale of said assets. In accordance therewith, the books and records of the corporation, Simon-Torrey, Inc., as well as its financial statements, were changed to reflect the agreed-upon modifications." (Emphasis here and elsewhere supplied).
A true and correct copy of the minutes of the board meeting which adopted the resolution of acceptance specifically mentions that all stock holders and board members were present and voting. This meeting took place on June 2, 1959. John Torrey, Simon, and Nell S. Flynn, Secretary, were all present at that meeting, perhaps with others. The third paragraph of the resolution provides that the corporate officers were authorized and instructed to sign any and all papers, instruments and documents necessary to effect the settlement and to carry out the purposes and intents of the resolution. These acts were ratified and confirmed in advance. Undoubtedly, if this is not written proof of a change or modification of a prior agreement, it is at least "a commencement of proof." C.C. Art. 2238.
Even though this written resolution is not signed by Mr. Torrey, the nature, language, and conditions expressed in the resolution are binding on the parties to the original deed of transfer and the wife of the deceased is not a third party for the purpose of requiring recordation.
The majority errs in its interpretation and application of Civil Code Art. 2276 to the facts of the case before us. The majority has erroneously seized upon what it calls the "landmark case" of Salley v. Louviere, 183 La. 92, 162 So. 811 (1935). Salley v. Louviere is a landmark case but not for the part which the majority seems to find so pertinent to its opinion. It has underlined that portion. For some reason, Chief Justice O'Niell, writing for the majority in Salley, gratuitously added to a sentence the words, "* * * which the law does not require to be in writing." This language is wholly out of context with the entire decision. The decision stands clearly for the proposition, "* * * It is well settled that this article of the Civil Code [2276] does not forbid the proving by parol evidence of a subsequent agreement to modify or to revoke a written agreement." [Cases cited].
Salley v. Louviere is cited in Parlor City Lumber Co. v. Sandel, 186 La. 982, 173 So. 737 (1937), which concerned the foreclosure on real estate under notes for the balance due on a mortgage. Salley and Parlor City Lumber Co. are cited in Investors Homestead Ass'n. v. Anglada, 193 La. 596, 192 So. 69 (1939), involving the foreclosure under notes secured by mortgage on immovables. Parlor City Lumber Co. is cited in Tholl Oil Co. v. Miller, 197 La. 976, 3 So.2d 97 (1941) which involved an option to purchase mineral leases. All of these cases find that Salley v. Louviere stands solidly for the proposition that parol evidence may be used to show the subsequent modification of a written agreement.
If the majority is to adhere to the legal concept that a contract required to be in writing may be modified only by a writing, *577 then such a writing is present in the instant case. The majority should confine its opinion to a discussion of the original written instruments and the subsequent written modifications. The resolution of the board speaks of a reduction in the sale price of the assets sold by Simon and Torrey to the corporation "* * * by the sum of $100,000 which would, in turn, reduce the amount of the promissory notes held by Warren M. Simon and John Torrey, representing a part of the consideration which they received for the sale of said physical assets." It was the clear intent of the parties expressed in a writing to reduce the promissory notes as is contended by the defendant. Those promissory notes are the obligation sued upon here in this foreclosure. Those notes have by writing been reduced and the interest on those notes has been remitted.
The Court of Appeal found:
"At the time of the aforesaid price reduction, the notes held by Torrey were reduced by agreement of the parties from $45,485.00 to $25,485.00. However, nothing was written on the notes themselves nor any written agreement made by which an alteration of the debt due could be shown. * * *"
The Court of Appeal further found:
"* * * It was intended that each of the parties would suffer a proportionate reduction (predicated upon each partner's actual ownership in the corporation) in the amount made payable to them. Such reduction would be in accord with the reduced amount of the new purchase price agreed upon. It is manifest to this court that such a reduction was contemplated but was, unfortunately, not guaranteed by a written agreement."
I am in total agreement with the Court of Appeal's finding of the intent of the parties and that their agreement to reduce the purchase price was manifested. However, I am also of the opinion that the reduction of the purchase price was evidenced by a writing, i. e., the resolution of the Board, as between the parties which is also proof against the wife of one of the parties. The writing here is more than a mere "commencement of proof." It is clear and unequivocal proof.
I respectfully dissent.

ON REHEARING
SUMMERS, Justice.
John Torrey and Warren M. Simon were the sole partners in a creamery business. On October 1, 1955 they sold the immovables and movables constituting the business to Simon Torrey, Inc., a newly formed corporation in which they owned most of the stock. The sale included the real estate which is the subject of this foreclosure proceeding. The total price stipulated in the sale was $256,746.71, of which $5,000 was paid in cash, the remaining $251,756.71 being represented in part by 50 vendor's lien and mortgage notes aggregating $227,425, bearing interest at the rate of five percent per annum from date until paid. Torrey held the even numbered notes in the amount of $1,819.40 each, and Simon held the odd numbered notes in the amount of $7,277.60 each.
In 1958, after audits, the Internal Revenue Service found Simon-Torrey, Inc., to be a "thin corporation" and ordered corporate revision for tax purposes. Negotiations between IRS, Simon, Torrey and the corporation resulted in a compromise settlement which required, among other things, that for tax purposes the sale price of the property transferred from the partnership to the corporation be reduced by $100,000, and that all interest be disallowed on the unpaid notes.
Further, to effectuate the compromise, and to have the corporate books reflect compliance for tax purposes, the following *578 resolution was adopted by the corporation on June 2, 1959:
"That at such time as the aforesaid compromise is brought to a successful conclusion, that the Certified Public Accountant of the Corporation be and he is hereby authorized to make such entries in the books and records of the Corporation as may be necessary to record the effects of said compromise.
"That the corporate officers, and especially its President, be and they are hereby authorized, empowered and instructed to execute and sign any and all papers, instruments and documents which may be necessary in order to effect said compromise settlement and to carry out the purposes and intents of this resolution, all of their acts and actions, as well as those of their counsel and Certified Public Accountant in connection therewith being hereby ratified and confirmed in advance."
Apparently corporate counsel and the accountant who negotiated the compromise with IRS were concerned with the treatment to be accorded the sale of October 1, 1955 from a tax standpoint. They were not particularly concerned with any agreement between Torrey and the corporation.
Thereafter, eight notes which came due were paid in the full principal amount to Torrey. This fact is confirmed by documentary evidence, and the testimony of Simon, the corporation president, and by testimony of the corporate counsel and accountant. Simon likewise collected the full face value of the matured notes he held during this time. No change was ever brought about in the face amount of the notes, and no papers, instruments or documents were executed by anyone to bring about any reduction or remission.
On April 25, 1966 Torrey died. Soon thereafter, on May 5, 1966, Simon wrote to Mrs. Torrey's attorney transmitting a copy of the sale of October 1, 1955, indicating that at the time of his death Torrey held sixteen of the notes described in the sale. No mention was made at the time of a reduction of the purchase price or of a remission of any part of the face amount of the notes. Mrs. Torrey's counsel was also given Simon's own handwritten note on a sheet of yellow legal paper which described the sixteen notes held by Torrey as having a value of $1,819.40 each, or a total of $29,111.40. These amounts represented the face value of the notes in question. Again there was no reference to a reduction or remission.
Then on October 5, 1972, Mrs. Torrey brought this suit to enforce collection of the notes she held. The petition invoked executory process against Simon-Torrey, Inc., now known as R.V.C., Inc., the corporate name having been changed by amendment of its charter in August 1966. It was alleged that Mrs. Torrey was the holder of eight notes dated October 1, 1955, each in the principal sum of $1,819.40, which she acquired as surviving spouse in community of John Torrey. She prayed that the real estate described in the act of sale, vendor's lien and mortgage with which the notes were identified be seized and sold to satisfy the amount due on these notes in the aggregate sum of $14,555.20, with interest, attorneys' fees and costs.
When the service of demand for payment was made, defendant's counsel advised plaintiff's counsel, and the Clerk of Court, that the proceedings were defective and would be challenged. The corporation then tendered $4,555.20, which they claimed to be the full amount due on the notes sued upon. The funds were deposited in the registry of the court.
Injunctive relief was sought by the corporation based upon allegations that, at the time suit was filed, the total amount actually due had been fully and completely extinguished by payment made and by the *579 amount of $4,555.20 tendered, being the reduced and remitted value of the notes sued upon. It was alleged that prior to the institution of the proceedings, there had been a reduction and remission of the notes sued upon; that four of the notes sued upon were not yet due at the time suit was instituted, and the executory proceeding was therefore premature. On these representations the trial judge issued a temporary restraining order and a rule nisi for a preliminary injunction. Substantially the same issues were raised by the corporation in a petition for declaratory judgment.
In the trial court, since the corporation failed to support its contention with any allegation that the sale of October 1, 1955 was altered by a competent subsequent written instrument reducing the purchase price, Mrs. Torrey filed an exception of no cause of action invoking the parol evidence rule. La.Civil Code art. 2276. Her position was and is that parol evidence cannot be admitted or considered to alter the provisions of the authentic act of sale and mortgage of the land sought to be seized and sold by showing a reduction of the purchase price recited therein. Thus, it is asserted, not having alleged the existence of a competent written instrument modifying the act of sale, the corporation's allegations that the parties agreed to a reduction or remission could not be supported by proof; accordingly, no cause of action was stated. Mrs. Torrey also contends that there is no evidence which will support a finding that a remission or reduction of the debt took place.
The trial judge referred the exception to the merits. After the receipt of all of the corporation's evidence, proffered to establish a reduction or remission, he held that none of the evidence could be considered to contradict or vary the recited consideration of the sale. In his opinion, the evidence was inadmissible under Article 2276 of the Civil Code and the jurisprudence applying the principle announced there.
Despite this holding, however, the trial judge did consider the evidence and gave his opinion that it did not reflect an actual remission by Torrey of any of the debt owed to him; and the resolution adopted by the corporation did not prove that John Torrey actually agreed to renounce or remit a portion of the debt. To the contrary, the trial judge found that the payment of the full amount of the notes after the adoption of the resolution and after the compromise agreement with IRS, together with the fact that memoranda written by Simon, president of the corporation, subsequent to John Torrey's death, referred to the full face value of the notes, clearly indicated that both Simon and John Torrey understood that the value of the notes had not been reduced.
The Third Circuit affirmed. In doing so the court stated these reasons for its judgment:
"This court concludes that the trial court in its discretion allowed the admission of parol evidence burdened with the objection of plaintiff's counsel, in order that it might serve to show a possible renunciation or remission of a portion or all of the debts sued upon. However, after so doing, the lower court was evidently not impressed with the parol evidence, which he had permitted, to the extent necessary to support a remission.
"It is noted that the availability of relief to the defendant was predicated upon his establishment of a remission in fact, as a reduction (as pointed out above) would have required a written agreement. However, it is most apparent from all the evidence presented that no remission was in any way or at any time intended." (emphasis added.)
According to the Court of Appeal, a remission of a part of the corporate debt by Simon and Torrey could have been established by parol evidence; whereas, a reduction in the price could only be proved by *580 a written instrument. Since no remission was proved and because no written instrument established the reduction in price, the corporation was obligated to pay the face amount of the notes.
We granted certiorari and in our original opinion affirmed the judgment of the Court of Appeal. This rehearing was granted to reconsider the application of the parol evidence rule to the facts of this case.
Although this rehearing was granted to reassess the application of this rule of law to the case at bar, upon further study and deliberation, we conclude that resolution of this issue is not necessary to a decision. For even if we were to find that the evidence was admissible to prove a reduction or remission of part of the corporate debt, a further study and evaluation of that evidence convinces us that no reduction of the purchase price or remission of the debt was ever, in fact, agreed upon.
Insofar as this Court is concerned, the question is not what the agreement was between Torrey as a taxpayer and the IRS; nor are we concerned with the agreement of Simon-Torrey, Inc., as a taxpayer with the government. Our concern is whether there was an agreement between the corporation and Torrey and whether the evidence in this record preponderates to the effect that such an agreement was in fact consummated which brought about a reduction, remission or release of part of the corporation's debt to Torrey.
The only writing offered and relied upon to support the contention that a reduction or remission of the debt took place is the corporate resolution of June 2, 1959. That resolution authorized, empowered and instructed its officers "to execute and sign any and all papers, instruments and documents which may be necessary in order to effect said compromise settlement" with the "Internal Revenue Service". Though the resolution authorized the reduction for tax purposes, it did so on the condition that the compromise involving the reduction be later evidenced by the "execution" of the necessary "instruments and documents". None of these instruments or documents were ever executed. Aside from the fact that the resolution had reference to a compromise contemplated with IRS, and not with Torrey, an authorization, it is evident, does not complete the transaction (reduction of the price or remission of the debt). It is at most "a commencement of proof," not the full proof the law requires. La.Civil Code art. 2238. Thus the action authorized was never carried out.
This fact is further corroborated by the very persuasive, uncontradicted documentary evidence to the effect that both Simon and Torrey collected the full face amount of the notes which fell due during the interval between the date of the resolution (June 2, 1959) and the date of Torrey's death (April 25, 1966). In Torrey's case there were eight. Equally as persuasive is the fact that Simon's correspondence with Mrs. Torrey's attorney after Torrey's death repeatedly referred to the full face value of the notes held by her, never mentioning a reduction or remission.
The attorney employed by Simon-Torrey to bring about a resolution of the tax problem with IRS did not testify that Torrey ever agreed to remit any part of the debt owed by the corporation. He indicated, contrary to the position taken by the corporation, that the government's objection was not to the value of the property received by Simon-Torrey, but to its treatment on the books of the corporation.
The testimony of the Certified Public Accountant also indicates that he was concerned with the tax problem between the government and the corporation. His testimony does not indicate that Torrey made any remission of the debt in favor of the corporation.
Aside from these considerations, we feel that these parties were knowledgeable *581 in legal matters and the affairs of business; they were moreover well-advised by counsel for the corporation. If they intended to renounce part of the debt evidenced by the notes they held, Simon and Torrey would have, and should have, complied with Section 122 of Title 7 of the Revised Statutes:
"The holder may expressly renounce his rights against any party to the instrument, before, at, or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon." (emphasis added.)
A strong inference that no renunciation of the debt was intended arises from the failure to properly confect such a partial renunciation in writing as the law requires.
Finally this case requires the Court to settle the rights of Torrey's widow in notes held at his death. In doing so we are urged to vary and alter the widow's rights evidenced by written notes identified with an authentic act of sale and mortgage. In order to do so we must accept the contention that the deceased Torrey orally agreed to accept less than the amount of the notes in satisfaction of the debt owed to him. Only parol evidence is received to support this position.
Since the claim is founded upon a purported oral agreement by the deceased it is subject to the strictest scrutiny. As this Court observed in Succession of Rageur, 155 La. 97, 98 So. 853 (1924) ". . . alleged declarations of a dead man against his interest are the weakest kind of evidence. In most instances such testimony is scarcely worth consideration. . . ."
The evidence does not therefore support a finding that John Torrey remitted any portion of the face amount of the notes he held, and he did not reduce the purchase price of the sale with which the notes were identified.
For the reasons assigned the original decree of this Court is reinstated and the judgment of the Court of Appeal is affirmed.
BARHAM, J., dissents.
See dissent on original hearing.
NOTES
[1] Simon-Torrey, Inc. was subsequently named R.V.C. Inc. For the purpose of this opinion, it will be referred to as Simon-Torrey, Inc.
[2] Parlor City Lumber Co. v. Sandel, 186 La. 982, 173 So. 737 (1937); Investors Homestead Ass'n. v. Anglada, 193 La. 596, 192 So. 69 (1939); Tholl Oil Co. v. Miller, 197 La. 976, 3 So.2d 97 (1941).