Frank "Tickie" SAIA

v.

CITY OF MEMPHIS LIGHT, GAS & WATER DIVISION, INC., A Division of the City of Memphis, Tennessee et al.

Civ. A. No. 79–403–B.

United States District Court, M. D. Louisiana.

Feb. 5, 1981.

Bobby L. Forrest, Forrest, Kiefer & Bacot, Baton Rouge, La., for plaintiff.

Frank J. Gremillion,. Baton Rouge, La., Frierson M. Graves, Jr., Memphis, Tenn., for City of Memphis, Light, Gas & Water Division, Inc.

John M. Wilson, Larry M. Roedel, Liskow & Lewis, New Orleans, La., Patricia L. Dunmire, Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, P. C., Tulsa, Okl., for Williams Exploration Co.

---

## MEMORANDUM OPINION

**JOHN V. PARKER, Chief Judge.**

■ This is a diversity suit arising out of the sale and purchase of various mineral interests in a north Louisiana gas field known as the "Bayou Galion Field." The primary legal issue involves application of Louisiana's parol evidence rule. It is well settled that in a diversity action a federal court is bound to apply the parol evidence rule of the state in which it sits. *Harville Rose Service v. Kellogg Company*, 448 F.2d 1346 (5th Cir. 1971), *cert. den.*, 405 U.S. 987, 92 S.Ct. 1248, 31 L.Ed.2d 453.

The legal issues are not particularly complicated, but it will be necessary, in order to understand the situation and the Court's reasons for its holdings, to state the facts in more detail than is normally done.

Plaintiff is an electrical contractor in Baton Rouge with very little experience in oil and gas transactions. He is the vendee or "owner" under a document entitled "Oil, Gas and Mineral Lease and Drilling Contract," dated July 2, 1973, between plaintiff and Lo-Ho-Fi Corporation and Glen D. Loe, vendors and "contractor" under the terms of which plaintiff purportedly acquired "[a]ll of the working interest, being 100 per cent of the working interest of a 70 per cent net production interest in and to those certain oil, gas and mineral leases" covering a described forty-acre tract in the Bayou Galion Field. Under the terms of the agreement, the "contractor" was to drill a well for the "owner" upon the described forty-acre tract. The agreement recites that the consideration is $40,000, $25,000 cash and a note executed by the "owner" in the amount of $15,000. Plaintiff paid only $18,000 and testified that he was never called upon by anyone to pay the balance. The parties have stipulated that plaintiff paid by means of a check dated December 31, 1973 (some six months subsequent to the date of the instrument), payable to the order of Glen D. Loe in the amount of $18,000 which cleared the drawee bank on February 15, 1974.

Plaintiff brings this suit against Williams Exploration Company ("Williams") and City of Memphis Light, Gas & Water Division, Inc., a Division of the City of Memphis, Tennessee ("the City"), because they refused to pay him the sum of $23,817.05 when they, in succession, acquired the gas field.

It appears that a man named Glen D. Loe, individually and through Lo-Ho-Fi Corporation, Glen D. Loe, Inc., Loe Oil & Gas Corporation and Energyline Pipeline, Inc. ("Loe"), corporations which he either owned or controlled, acquired and developed the Bayou Galion Field. Loe got into serious financial difficulties in 1976 or 1977, perhaps earlier. In any event, two of his larger creditors were the American Bank & Trust Company of Baton Rouge, to whom he owed some $4.2 million and Williams, to whom he owed some $2.2 million.

Loe worked out an agreement with Williams to transfer the entire field to Williams in exchange for cancelling the debt to Williams and in consideration of Williams paying various other creditors of Loe. Subsequent to that agreement, the City of Memphis, which apparently operates its own utilities system, expressed an interest in acquiring the field; and an agreement dated July 14, 1977, was worked out whereby Loe would reacquire all outstanding interest in the field and convey all leases, equipment, pipelines, et cetera, to Williams, which, in turn, would contemporaneously convey the field to the City.

Mr. F. Henri Lapeyre, Jr., of the law firm of Jumonville, Hartley, Plauche' & Broadhurst of New Orleans and Lafayette, represented the City in the Bayou Galion Field transaction. He testified that there were numerous title problems, particularly in that portion of the field known as the "Bennett Lease." In that area Loe had executed double conveyances of the same interest in some instances, the wrong Loe vendor had executed some conveyances, and many documents were unrecorded. Although Mr. Lapeyre took the position that unrecorded conveyances from the Loe interests were invalid, lead counsel for Loe, Mr. Lewis Ray Sleeth of Jena, Louisiana, desired that all

outstanding claims against his clients be concluded. The City eventually decided that it would be willing to pay at least something toward the cost of acquiring such outstanding claims. The evidence does not establish the method used for determining the amount which would be paid but the contract document (agreement of purchase and sale, dated July 14, 1977) established a class of "Outside Investors" which included persons "who have or who claim to have drilled or participated in the drilling of wells ... who presently own or claim an interest in such wells or a portion of" the leases in the Bayou Galion Field.

The closing agreement obligated Loe to deliver valid title and further provided that Loe would attempt to acquire "all interests of the Outside Investors." The assignments "and other documents" relating to acquisition of such interests were to be held in escrow by the American Bank. The agreement further provided that Williams and the City "each in that order" would fund purchases of these "interests of the 'Outside Investors'" not to exceed a prescribed amount at actual cost to Loe, and the agreement further gave Williams and the City the option of accepting all of the "Outside Investor" interests or less than all, if all did not tender the proper documents.

Loe apparently contacted all of the "Outside Investors" and furnished documents for reconveyance of any outstanding interest to Loe. Detailed instructions were sent which specifically informed each "Outside Investor" that in order to get paid, it would be necessary for him to execute and deliver two documents. The first required document was an "acceptance of offer" in which the "Outside Investor" accepted the offer of Loe, declared himself satisfied that the offer was a fair value and further waived and relinquished all claims of any kind against Loe relating to the Bayou Galion Field. The final paragraph of that document provided that the releases also ran in favor of Williams and the City. The attorney for Loe, Mr. Sleeth, insisted upon securing these releases for his clients. The second document required was an assignment of all interest in the field to Loe.

The closing date was fixed for July 22, 1977, in Tulsa, Oklahoma. The transfer was a complicated transaction taking some two days and involving transfer of the entire gas field, of which the "Outside Investors" represented only a small part. A list of twenty-six "Outside Investor" contracts was drawn up and a proposed disbursement in the amount of $23,817.05 was shown for plaintiff, Mr. Saia. At the closing all "Outside Investors" except the plaintiff and one other delivered both the "acceptance of offer" form and the executed assignment. Williams and the City refused to reimburse Loe for the cost of these two contracts, and, since Loe did not receive his release, he also objected. Accordingly, these two "Outside Investors" were not paid and this suit is the result.

The parties have stipulated that if Mr. Saia had submitted both executed documents at the closing in Tulsa, he would have received the amount specified.

Plaintiff claims that at the closing, Williams and the City agreed to a sixty-day extension of time for Mr. Saia to furnish the executed "acceptance of offer" form. The parties have stipulated that the document was furnished within sixty days after July 22, 1977, but more than thirty days after that date. The defendants object to any parol evidence regarding any modification in the terms of the written agreement.

Mr. Lapeyre testified that about half of the "Outside Investor" contracts were never recorded in the conveyance records. Plaintiff's agreement was among the unrecorded agreements. A long line of Louisiana cases has held that any interest in a mineral right is an immovable, and Article 18 of the Mineral Code (LSA–R.S. 31:18) codifies that law. Under Louisiana's laws of registry, a contract affecting immovable property has no effect upon third persons unless it is recorded in the public records. Louisiana Civil Code Article 2266; LSA–R.S. 9:2721. In addition, it appears that the identical interest which Loe conveyed to plaintiff was also conveyed to Mr. Rolfe H. McCollister of the law firm of McCollister,

Belcher, McCleary, Fazio, Mixon, Holliday & Jones of Baton Rouge. That conveyance was dated January 26, 1973, and it was recorded in the conveyance records on August 21, 1973. Accordingly, it seems clear that plaintiff never acquired a legally enforceable interest in the gas field.

Plaintiff made his investment in the Bayou Galion Field upon the recommendation of Mr. Theodore L. Jones, at that time a partner in the McCollister law firm who was representing the plaintiff in some tax matters. Mr. Jones appeared as a witness on both the Saia agreement and the McCollister agreement. The Court was never furnished with any explanation as to why the Saia agreement was not recorded in the public records.

Testimony establishes that Mr. Saia wanted substantially more money for his interest than the $23,000 listed in the proposed disbursement list. At the time of the closing in 1977, the plaintiff had retained Mr. Leon Gary, Jr., of Baton Rouge to represent him in connection with the Bayou Galion Field. Mr. Gary, on behalf of plaintiff, entered an agreement with Mr. McCollister dated July 22, 1977 which was offered in evidence. Under the terms of that agreement, Mr. McCollister received the executed assignment of Mr. Saia's contract to Loe under condition that it not be released for any amount less than $30,000. Mr. McCollister testified that he agreed to pay Mr. Saia the difference between the amount to be received from Loe and $30,000, and by check dated September 1, 1977, the McCollister firm paid Mr. Saia the sum of $6,187.95.

Mr. McCollister attended the closing, according to his testimony, primarily to represent the American Bank, which was to receive several million dollars but also on behalf of himself since he personally was one of the "Outside Investors." Mr. Michael S. Wolf of the McCollister firm also attended the closing with Mr. McCollister and he testified that he was representing Loe, although Mr. Sleeth was lead counsel for Loe. Both Mr. McCollister and Mr. Wolf testified that it was "my understanding" that the attorneys for Williams and the City granted Mr. Saia an extension of sixty days within which to submit his executed "acceptance of offer." This testimony was received in evidence subject to the objection of the defendants that parol testimony could not vary the terms of the written agreement.

Louisiana law requires that all contracts relating to immovable property be in writing and further provides:

"... Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor what may have been said before, or at the time of making them, or since." (LSA–C.C. art. 2276)

This rather clear statement of the parol evidence rule seems to be honored more in the breach than in its observance by Louisiana courts since it apparently has at least as many exceptions as the hearsay evidence rule. See, for example, *Investors Homestead Association v. Anglada*, 193 La. 596, 192 So. 69 (La.1939); *Arceneaux v. Adams*, 366 So.2d 1025 (La.App. 1st Cir. 1978); *Rutherford v. Impson*, 366 So.2d 944 (La. App. 1st Cir. 1979), *writ den.*, 369 So.2d 140 (1979); *Lipscomb v. Chadbourne*, 378 So.2d 147 (La.App. 1st Cir. 1979). In *Torrey v. Simon—Torrey, Inc.*, 307 So.2d 569 (La. 1974), the Louisiana Supreme Court wrestled with the parol evidence rule and even granted a rehearing to give it further consideration, but provided no clear exposition concerning the circumstances under which the exceptions will apply.

I conclude that a Louisiana court would probably receive the tendered parol evidence since it relates only to an extension of time to submit an ancillary document which, in itself, is not related to a conveyance of title to an immovable. The requested document is simply an acceptance of an offer and a release of all claims and does not, in itself, purport to convey anything.

I, nevertheless, conclude that the only extension granted to Mr. Saia was for a period of thirty days and that Mr. McCollister and Mr. Wolf are in error in their recollection. The most significant evidence re-

lating to the extension is a letter dated July 7, 1977, from Mr. Lapeyre, the attorney for the City, to Mr. Sleeth, the attorney for Loe. The contents of the letter do not relate to this issue but the evidence establishes that Mr. Sleeth took the letter to the closing in Tulsa on July 22, 1977, and that he made handwritten notes on the back of the letter. Mr. Sleeth apparently dropped the letter or left it, because, subsequent to the closing, it was found by an employee of Williams who was picking up all of the left over papers from the closing and it was placed in a file. When this lawsuit was commenced, it was discovered in the file, and it bears the following handwritten note which Mr. Sleeth acknowledged to be his handwriting:

"*Henri*

"1. Letter from City as to 30 days on Saia & Diamond [the other "Outside Investor" who failed to submit his documents]

"2. Instr. of no warranty as to Saia & Diamond."

(Exhibit L)

Mr. Sleeth acknowledged the handwriting to be his own and testified that he had a hazy recollection that a sixty-day extension was also discussed. His memory was not clear as to whether a thirty-day delay or a sixty-day delay was actually granted by Mr. Lapeyre. Mr. Lapeyre testified positively and unequivocally that it was his opinion that Mr. Saia owned no valid interest in the field and he recommended to the City that they ignore Mr. Saia and Mr. Diamond. The City was, nevertheless, willing to grant a thirty-day extension and, on behalf of the City, he testified that he granted a thirty-day extension to Mr. Sleeth.

When Mr. McCollister arrived in Baton Rouge, he returned Mr. Saia's executed assignment to Mr. Gary. He sent along a copy of the closing disbursements, which, as previously noted, included that of Mr. Saia, noting that the "documentation" from Mr. Diamond and Mr. Saia was not accepted. He further stated:

"... [H]owever, I did get the purchaser to agree to hold open the possibility of

acceptance of the offer by Mr. Diamond and Mr. Saia *for a reasonable period of time.*" (Emphasis supplied)

It was not until September 8, 1977, that Mr. McCollister, on behalf of Mr. Saia, submitted to Mr. Lapeyre both of the executed documents which were required from all "Outside Investors."

Mr. Lapeyre declined to accept the documents and there followed a series of "position papers" by the attorneys involved. The Court concludes that Mr. Lapeyre's memory is more correct regarding the extension of time and that it is confirmed by the contemporaneous handwritten notes made by Mr. Sleeth. This is further confirmed by the fact that Mr. McCollister in his memorandum to Mr. Gary of July 25th referred to "a reasonable time" and no specific number of days.

Plaintiff has simply not borne his burden of proving that a sixty-day extension of time was granted within which to deliver all required documents.

■ Plaintiff has further made the claim that he and the other "Outside Investors" are third party beneficiaries under the agreement between Loe, Williams and the City and that as the beneficiary of a stipulation pour autrui, as it is known in Louisiana, he is entitled to be paid. Articles 1889 and 1890 of the Louisiana Civil Code govern stipulations pour autrui. A beneficiary is entitled to accept and to enforce a stipulation made by others in his favor. It is essential to the validity of a stipulation pour autrui that it forms the cause or consideration of the contract and not be a mere incident of that agreement. *Fontenot v. Marquette Casualty Co.*, 258 La. 671, 247 So.2d 572 (1971); *City of Shreveport v. Gulf Oil Corporation*, 431 F.Supp. 1 (W.D.La. 1975); 11 Tul.L.Rev. 18.

The Court cannot conclude that the July 14, 1977, agreement between Loe, Williams and the City contains a stipulation pour autrui in favor of plaintiff and the other "Outside Investors." Mr. Lapeyre testified that the basic agreement had been prepared by Tulsa attorneys representing Williams,

that he reviewed it and inserted language in the agreement specifically designed to negative any such stipulation. That language appears in paragraph 13 of the agreement at the bottom of page 23 and the top of page 24. The paragraph in question relates to various undischarged potential liabilities from liens and other claims and provides, in part:

> "... Further nothing herein shall be deemed to imply that [Williams and the City], or any of them, shall have any liability for or on account of any mortgages, liens, encumbrances or other charges or indebtedness respecting the Subject Interests, the Subject Leases, the Subject Lands, the Pipeline or the Pipeline Rights, except that certain indebtedness (and only such indebtedness) is to be paid at closing as provided in Sections 3 and 4 hereof. In no event shall this Agreement be considered a stipulation pour autre [sic] or a contract in favor of the holders of such indebtedness or enforceable by any such holder."

Included in the "indebtedness to be paid at closing" mentioned in Section 4(b)(iv) is the funding of "the Investor Tracts." Thus, as the Court construes that agreement, it specifically provides that it shall not be considered a stipulation pour autrui concerning anyone who is entitled to receive anything under Sections 3 and 4 of the agreement; and since the "Outside Investors" are specifically mentioned in paragraph 4, the agreement does not constitute a stipulation pour autrui in their favor.

■ In any event, assuming that a Louisiana court would hold that plaintiff was a third party beneficiary to this contract, it is apparent that he failed to meet the conditions under which his benefit was to be conferred. The conditions were spelled out in the contract that the assignment "and other documents" must be submitted at the time of closing. As we have already discussed at length, plaintiff failed to submit the "acceptance of offer" at the time of closing. The requirement for the "acceptance of offer" was not a mere mechanical or technical stipulation; as we have previ-

ously noted, this document contains the release of all claims which Loe was particularly interested in and which his attorney insisted upon because of the outstanding claims and potential liability which Loe had to the "Outside Investors." Under those circumstances, insistence upon delivery of the second document was fully in accord with the agreement and was neither arbitrary nor capricious.

For the foregoing reasons, there will be judgment in favor of the defendants and against the plaintiff, DISMISSING his suit.