**(92 South. 727)**

**No. 23730.**

**TOMLINSON v. ALLEN.**

(June 29, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Principal and agent ⬅103(7)—Mandate; power must show clear intention to authorize agent to conclude sale and convey property.**

Under Civ. Code, art. 2997, requiring a power to sell to be express and special, the power relied on must show a clear intention to authorize the agent to conclude a sale and convey land.

2. **Brokers ⬅94—Broker held authorized only to find purchaser, and not to bind principal to sell.**

Listing property with a broker for sale and fixing the price at which it is to be offered confers authority only to procure a purchaser, and not to conclude a sale and convey the property, especially where the right is reserved to sell direct or through other agents.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by J. R. Tomlinson against J. P. Allen. From a judgment for defendant, plaintiff appeals. Affirmed.

Hall & Bullock, of Shreveport, for appellant.

Smitherman & Tucker, of Shreveport, for appellee.

By Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

OVERTON, J. Plaintiff alleges that defendant, during the spring and summer of 1913, engaged the services of the Steere Home Construction Company to procure purchasers for lot 6 of certain lands belonging to him in the parish of Bossier. He further alleges that defendant promised to sell said land for $100 an acre, of which 20 per cent. should be paid cash, and the balance in eight equal payments, maturing in one to eight years, and bearing 6 per cent. yearly interest, payable annually. It is also alleged that the terms of the offer permitted a purchaser, if he saw proper, to make a larger cash payment, and to make the deferred payments for shorter periods. Plaintiff also alleges that he accepted, on August 31, 1917, defendant's offer and promise to sell, as to 80 acres of said tract, which he specifically describes, agreeing to pay therefor $100 per acre, as follows: 20 per cent. cash, 5 per cent. on January 1, 1918, and the balance, in four equal installments, maturing in one, two, three, and four years and bearing 6 per cent. yearly interest payable annually. He also alleges that defendant's offer to sell and his acceptance thereof are evidenced by letters and telegrams. He also alleges that, notwithstanding his acceptance of defendant's offer, and his willingness, readiness, and ability to comply, defendant has illegally failed and refused to execute a deed to said property, and to deliver possession thereof. He therefore sues for specific performance of the alleged contract, and in the alternative for damages in the sum of $4,000, with legal interest thereon from judicial demand until paid.

Defendant denies that he is under obligations to transfer to plaintiff the land in controversy, or that he is liable in damages for his failure to do so, and avers that he arranged with the Steere Home Construction Company to find buyers for his Allendale plantation, containing approximately 6,000 acres. He avers that the plantation had been platted into parcels, and that lot 6, of which the land in controversy forms part, is one of those parcels. He further avers that it was well understood that, in listing said property with said company, he himself expressly reserved the right to sell all or any part of the property listed, and that accordingly, acting within his reserved rights, on August 22, 1917, he sold that part

of the property involved in this suit to R. B. Nelson, and delivered possession to him.

Defendant in his briefs presents his case from various standpoints, but we think the case may be disposed of by a consideration of only one of the reasons urged why plaintiff should not recover, and that reason is that defendant merely listed the property with the Steere Home Construction Company to procure purchasers, and not to execute the contract of sale, or bind him to execute it.

It appears that defendant was the owner of Allendale plantation in the parish of Bossier, a plantation containing approximately 6,000 acres. He desired to dispose of it, by selling it in comparatively small tracts, and for this purpose procured the services of the Steere Home Construction Company, a firm or corporation located in Shreveport, and engaged in business as a real estate agent or broker. The plantation was subdivided into 20 tracts, containing from 67 to 440 acres each, and a price per acre on each tract was fixed. The various tracts were marked off on a blueprint, which, together with the price per acre desired for each, was sent to the Steere Home Construction Company by mail on June 20, 1917. In the letter fixing the prices there appears the following statement:

"This land is listed to you subject to a prior sale and also subject to an oil and gas lease on each tract which is now in the Bank of Shreveport."

Then there follows a statement of some of the conditions of the lease, and the amount of royalty stipulated to be paid to the owner, which the letter states will be paid to the purchasers of the land. The letter concludes with the following postscript:

"We reserve the right to sell this land ourselves or have other agent to sell the same."

The Steere Home Construction Company made an effort to obtain the exclusive agency, but defendant refused to grant it, as appears from his letter of June 23, 1917.

On August 31, 1917, plaintiff accepted an offer from the Steere Home Construction Company to sell 80 acres of lot No. 6, the 80 acres in controversy, and William McAnn, who is not a party to this suit, on that day, or immediately prior thereto, verbally accepted an offer from that company to purchase the balance of the lot, and gave a check to the company in part payment. On the date mentioned plaintiff also wrote defendant that he would purchase the 80-acre tract, and the Steere Home Construction Company, on the same day, telegraphed defendant as follows:

"Sold all tract 6 as per contract with you. Good substantial party buying. Money deposited with us to-day to bind deal. We are writing fully."

Defendant replied to the Steere Home Construction Company, saying that he felt under no obligation to accept the sale that it had made, that the time had elapsed in which it was authorized to act before its telegram and letter had been received, and that he had sold the property to another.

While the above reply, considered alone, might possibly indicate that the Steere Home Construction Company was authorized to bind defendant by entering into a contract of sale, yet we think that the evidence as a whole clearly shows that such was not defendant's intention, but that the only intention he had was to engage defendant to procure purchasers for the various tracts, reserving to himself the right to conclude the sale.

The law governing such matters is thus stated in Corpus Juris, vol. 9, p. 528:

"Except where the power to complete a sale, or to enter into a contract of sale, binding on the principal, is clearly given to the broker by the terms of his contract of employment, the ordinary authority of a real estate broker employed to sell real estate is merely to find a purchaser who is ready, able, and willing to

enter into a contract on the terms specified by, or acceptable to, the principal; and, in the absence of such special authorization, he has no authority to enter into a contract to sell, or to sell and convey, binding on the owner; and this rule is especially applicable where the broker is employed merely to find a purchaser."

Ruling Case Law, vol. 4, p. 262, in speaking of brokers, says:

"Since it is generally conceded that his only duty is to find a purchaser who is ready, willing, and able to purchase upon the terms specified, the overwhelming weight of authority is to the effect that a broker has no right to conclude and execute a binding contract unless such power is expressly conferred by the use of unequivocal expressions to that effect; that the employment of a real estate broker, as such, or the mere listing of property with him, or the direct instruction to find a purchaser, or any communication from the owner to the broker with respect to the sale of land, will be regarded as giving the agent only the authority to find a purchaser, and that no wider authority than that is necessarily indicated by the words 'to sell' or 'to make a sale'; it being a matter of common understanding that, even though one uses such terms in soliciting the services of a real estate broker, nevertheless he reserves to himself the power to conclude the sale, unless there is an express provision to the contrary. The mere fact that the owner specifies the terms upon which he is willing to dispose of the property, or that he gives the broker the exclusive right to sell, does not alter the application of the rule, nor does the use of the term 'to close the bargain' enlarge the broker's authority."

In the case note to Weatherhead v. Ettinger, 17 L. R. A. (N. S.) 210, it is said:

"The inquiry to be determined, then, in each doubtful case, is whether the owner has shown an intention that his agent shall merely find a purchaser, or that he shall go further and actually effect a binding contract of sale."

In Schaeffer v. Millar and L. H. Good (the Battleford Realty Company), 11 Dominion Law Reports, 417 (Canada), a suit for specific performance, where Millar listed his property with Good, a real estate broker, using the words, in doing so, "I hereby agree to give you the right to sell," but reserved the right to sell the property himself or through another agent, it was said:

"It would therefore seem to me to be clear that, where an owner gives authority to an estate agent to 'sell his property,' and in such authority reserves the right to sell the property either by himself or through other agents, such reservation, being consistent only with an intention on his part to retain the right to finally refuse or accept, is to be interpreted as an intimation that the agent's authority is limited to finding a purchaser."

It will be recalled that in the case at bar there is a similar reservation.

[1, 2] Under our Code, the power to sell must be express and special. C. C. art. 2997. From this it follows that the power relied on must show a clear intention to authorize the agent to conclude the sale and convey the property. In this case letters are relied on to show the power to bind defendant. We see nothing in them, however, which authorized the agent to go further than to procure purchasers who were ready, willing, and able to buy, and nothing in them that authorized the agent to bind the principal to sell. The listing of the property with the broker for sale and the fixing of the price on each lot at which it was to be offered conferred no such power. Especially is this so in view of the fact that the owner, in listing the property, reserved the right to sell it himself, or through another agent, and at no time modified this power. The fixing of the price and terms on each tract was evidently done, which is usually the case, for the purpose of better enabling the agent to procure some one willing to buy, but it is expected that, when such a one is found, the matter will be referred to the principal. If the principal should refuse to conclude the sale and convey the property, the prospective purchaser cannot complain, though it well may be that the agent, as a result, may be entitled to his commission.

In our opinion, plaintiff views the matter incorrectly when he says that defendant au-

thorized the Steere Home Construction Company to offer the property for sale at a fixed price, and the moment that one willing and able to buy accepted defendant became bound to convey it. The power conveyed merely was to procure purchasers, leaving it to the principal to conclude or not conclude the sale.

It may be said, in conclusion, that at no time did defendant accept any offer to purchase made by plaintiff, nor did defendant make to plaintiff any offer to sell, which, if accepted, would bind him, unless the offer made by the Steere Home Construction Company should be considered such an offer, which we think not.

It is unnecessary to consider any of the remaining defenses.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed; appellant to pay the costs.