McBRIDE, Judge.
John J. Gelpi and wife by written instrument, dated March 10, 1960, agreed to purchase, and Joseph S. Buceóla, owner, agreed to sell to them the property known as 4924 Wright Road, New Orleans, on the terms and conditions as set forth in the written agreement, the transaction having been negotiated by Stan A. Plauche, Inc., real estate broker.
In accordance with the condition “upon acceptance, purchaser will immediately deposit with agent demand note $2,150” John J. Gelpi executed the contemplated note and delivered it to the agent.
The written agreement provided “act of sale to be passed at seller’s option 30 or 60 days.” Within a sixty-day period immediately following the execution of the agreement of sale, Buceóla made no tender of title to the purchasers nor did they take any steps to put the seller in default.
On April 2, 1960, John J. Gelpi obtained a commitment from Globe Homestead Association for a loan of $14,000 on the property to be secured by his vendor’s lien mortgage thereon.
On May 31, 1960, by authentic act, Buc-eóla sold the property to a corporation designated in the sale as Stan A. Plauche Real Estate Company, Inc., represented by Stan A. Plauche, President, for a recited consideration of $18,172.09, which was entirely represented by the purchasing corporation’s assumption of a then existing mortgage on the property which Buceóla had given in favor of his vendor, Globe Homestead Association, at the time he acquired the property.
Two days after said transfer of title to Stan A. Plauche Real Estate Company, Inc.,, said corporation, through Robert Angle, collected $2,150 from John J. Gelpi as a cash deposit to bind plaintiffs’ purchase of the property from Buceóla in lieu of the note for $2,150 which had initially been given the agent.
Sometime in June 1960 Globe Homestead Association foreclosed on Buccola’s vendor’s lien mortgage which it held on the property. This suit ensued.
Mr. and Mrs. Gelpi seek to hold Buceóla for double their deposit, plus attorney’s fees, on the theory that the deposit was earnest money and where as Buceóla failed to carry out his agreement of sale, he is liable for the return of double the amount.
Plaintiffs seek the same relief as against Stan A. Plauche, Stan A. Plauche Real Estate Company, Inc., and the latter’s surety on its real estate broker’s bond, all in solido. The real estate company and Plauche are sought to be held on the allegation that they, by taking title from Buceóla, assumed all of the obligations of the latter to deliver a merchantable title to the property to them under the agreement of sale with Buceóla.
After a trial on the merits, plaintiffs recovered judgment against Buceóla for $2,-150, plus attorney’s fees; the suit as against the other defendants was dismissed; plaintiffs have appealed.
The name of the real estate agent in the transaction between Buceóla and plaintiffs appears as Stan A. Plauche, Inc., while the name of the corporation purchasing the property from Buceóla is Stan A. Plauche Real Estate Company, Inc. Whether the two names refer to the same corporation *488 we do not know, but the attorney for plaintiffs in brief and in argument referred to them as though they are one and the same.
Buceóla was delinquent on his vendor’s lien mortgage held by Globe Homestead Association, no payments having been made thereon after January of 1960. At the time Buceóla agreed to sell to plaintiffs, the property was not only encumbered with .the mortgage but also by a great many liens, the nature of which is not indicated by the record. Mr. Flanders, the notary public for Globe Homestead Association, testified that Buceóla was inhibited from delivering title to plaintiffs by the large indebtedness bearing against the property.
Stan A. Plauche testified that Buceóla, fearing a foreclosure, transferred title to Plauche’s corporation, all parties hoping that if the property were in stronger hands, the homestead might defer foreclosure. Mr. Flanders suggested to Plauche that such a plan “might work” and that it “would be a way of working it out.” However, the liens bearing against the property were not adjusted and foreclosure could not be avoided.
When asked why he collected the cash deposit from Gelpi after title had been transferred to his corporation, Plauche stated he was “in hope of selling the house to Mr. Gelpi.” He added:
“Yes, sir, I wanted to sell the house to Mr. Gelpi. I would have loved to have sold it because I would have earned $1,400 commission on it.”
We are sure that all parties to the transaction were in utmost good faith. It was unfortunate, however, that Buceóla agreed to sell plaintiffs property which was so heavily encumbered both by mortgage and liens that the sale could not be consummated.
Neither Stan A. Plauche, his corporation, nor the latter’s surety is indebted unto plaintiffs for anything. The transfer of title by Buceóla to Plauche’s corporation did not have the legal effect "of an assumption of Buccola’s obligations under the agreement of sale; neither did it create a new obligation on the part of Plauche’s corporation to deliver title to plaintiffs nor to be bound for double the return of their deposit.
The law is plain that every transfer of immovable property must be in writing. LSA-C.C. art. 2275. This applies as well to a contract to purchase or sell realty. Davidson v. Midstates Oil Corporation, 211 La. 882, 31 So.2d 7. There never was any agreement of sale between Plauche’s corporation and Buceóla.
The deposit has been returned to plaintiffs. On June 27, 1960, their attorney demanded such return and a few days later Plauche’s attorneys sent a check for $2,150 to him which was refused because in the interim suit had been filed for double the amount, plus attorney’s fees. Shortly thereafter Plauche deposited the amount of the deposit in the registry of the court and the funds were withdrawn by plaintiffs.
The judgment appealed from is affirmed.
Affirmed.
REGAN, J., concurs.
SAMUEL, J., concurs with written reasons.