342 So.2d 881 (1977)
Arthur H. FLEMING, Plaintiff-Appellee,
v.
John J. ROMERO, Defendant-Appellant.
No. 5795.
Court of Appeal of Louisiana, Third Circuit.
February 14, 1977.
Rehearing Denied March 2, 1977.
Writ Refused May 6, 1977.
*882 Provost, Ernest & Schwing by James W. Schwing, New Iberia, for defendant-appellant.
Mestayer & Simon by S. Gerald Simon, New Iberia, for plaintiff-appellee.
Before HOOD, GUIDRY and FORET, JJ.
GUIDRY, Judge.
Plaintiff brings this action for specific performance and damages as a result of defendant's alleged breach of a contract to sell. The trial court found that there was a contract to sell existing between plaintiff and defendant and that defendant breached that contract. The trial court awarded plaintiff damages in the amount of $1,315.00. Defendant appeals from that judgment. Plaintiff answered the appeal asking for an increase in the amount of damages awarded.[1]
The facts show that sometime prior to September 18, 1972, F. M. "Pete" Olivier, a real estate broker, was informed that defendant, John Romero, was interested in selling a house and lot located at 331 Country Club Drive in New Iberia, Louisiana.[2] In an attempt to secure a listing of the defendant's property Mr. Olivier sent his grandson Jeff Patout, a part time real estate salesman, to defendant's place of business with an agreement to be signed by defendant. Jeff Patout was a licensed real estate salesman. An instrument of some kind was executed by Mrs. John Romero in her husband's absence. This agreement or instrument was not introduced in evidence and is not part of the record. Subsequent to the signing of the aforesaid agreement by Mrs. Romero, Olivier returned to defendant's place of business to secure execution of another agreement. This time the instrument was signed by defendant. This second instrument, which was signed by Mr. Romero and dated September 18, 1972 appears in the record as Plaintiff's Exhibit 2 and is as follows:

*883 
Examination of the instrument reveals that it is a printed form titled "Agreement to Purchase or Sell". The word "Purchase" has been lined out. F. M. "Pete" Olivier, Realtor is printed on the top of the form. Jeff Patout is written in as the agent, although the parol evidence indicates that Mr. Olivier, whose handwriting appears on the face of the instrument, is the person who had the agreement executed. The agreement provides that defendant offers and agrees to sell his property located at 831 Country Club Drive, said property measuring 96 feet by 125 feet. The sale price of the property is $23,000.00. The agent's commission on the sale is fixed at $1,000.00. The offer was to remain open and irrevocable until November 18, 1972. Other provisions in the instrument remain blank. No other names, except those hereinabove mentioned, appear on this instrument.
In addition to this agreement plaintiff introduced into the record as Plaintiff's Exhibit 3, a handwritten receipt dated September 18, 1972. The receipt stated: "Received from Pete Olivier $1,000.00 on property 331 Country Club Drive" Signed /s/ John J. Romero.
Plaintiff is a real estate broker who shared an office with Mr. F. M. "Pete" Olivier.
Plaintiff contends that once the defendant signed the "Agreement to Sell", P-2, and received the deposit, P-3, it was then not necessary for plaintiff to accept the contract in writing. Plaintiff testified that he gave Mr. Olivier the $1,000.00 cash which represented the deposit and therefore Mr. Olivier, as defendant's agent to sell bound the defendant when he accepted plaintiff's deposit.
After reviewing the evidence we find that the trial court correctly concluded that P-2 is a listing agreement. However, we are of the opinion, for reasons hereinafter *884 set out, that the trial court fell into error when it concluded that the listing agent, as a consequence of this agreement, had authority to sell defendant's property and that plaintiff became a party to a valid buy/sell agreement when defendant's offer to sell through his alleged agent was accepted by plaintiff.[3]
A real estate agent without any express or special grant of power, does not have the authority to bind his principal to a contract to sell. LSA-R.C.C. 2997. Customarily the real estate agent renders the service of promoting the sale of real estate by procuring prospective purchasers for his clients. Accordingly, the relationship created when one agrees to list his property for sale with a real estate broker does not usually bring the relationship within the purview of the mandate articles of the Civil Code, i.e., power to buy or to sell. Rather the real estate broker's duties are limited to those which can be analogically drawn from LSA-R.S. 37:1454 and from the customs and practices of real estate brokers in general. Leggio v. Realty Mart, Inc., 303 So.2d 920 (La.App.1st Cir. 1974) writs refused February 7, 1975.
The law governing such matters was set forth in the early case of Tomlinson v. Allen, 152 La. 41, 92 So. 727, 729 (La.1922), wherein the court stated:
"`Except where the power to complete a sale, or to enter into a contract of sale, binding on the principal, is clearly given to the broker by the terms of his contract of employment, the ordinary authority of a real estate broker employed to sell real estate is merely to find a purchaser who is ready, able, and willing to enter into a contract on the terms specified by, or acceptable to, the principal; and, in the absence of such special authorization, he has no authority to enter into a contract to sell, or to sell and convey, binding on the owner; and this rule is especially applicable where the broker is employed merely to find a purchaser.' (Corpus Juris, Vol. 9, p. 528) . . .
"Under our Code, the power to sell must be express and special. C.C. art. 2997. From this it follows that the power relied on must show a clear intention to authorize the agent to conclude the sale and convey the property. In this case letters are relied on to show the power to bind defendant. We see nothing in them, however, which authorized the agent to go further than to procure purchasers who were ready, willing, and able to buy, and nothing in them that authorized the agent to bind the principal to sell. The listing of the property with the broker for sale and the fixing of the price on each lot at which it was to be offered conferred no such power. . . The fixing of the price and terms on each tract was evidently done, which is usually the case, for the purpose of better enabling the agent to procure some one willing to buy, but it is expected that, when such a one is found, the matter will be referred to the principal. If the principal should refuse to conclude the sale and convey the property, the prospective purchaser cannot complain, though it well may be that the agent, as a result, may be entitled to his commission."
Inspection of the instrument in question reveals that no where in said instrument is F. M. "Pete" Olivier or Jeff Patout, expressly or specially given the power to sell and convey defendant's property.
The obvious confusion giving rise to this litigation occurs as a result of the real estate agent's employing the use of a standard form "Buy/Sell Agreement" in securing this listing agreement. The fact that the agreement executed by defendant was not a valid and binding "Buy/Sell Agreement" but was intended as a listing agreement becomes apparent when one considers the changes made in the instrument before *885 signing; the obvious omissions from the document; as well as the fact that the defendant's signature appears in the space normally provided for the offeree's acceptance.
This latter fact is most significant. Defendant signed the document at the direction of Mr. Olivier, an experienced realtor.[4] Had Mr. Oliver and the defendant ultimately intended that this instrument be an enforceable "Buy/Sell Agreement" the defendant had only to sign in the space provided for the offeror's signature. This was not done, it being the obvious intent that the defendant in signing where he did merely consented to the terms of the listing agreement by appointing F. M. "Pete" Olivier/Jeff Patout as his listing agent. This conclusion is further supported by the testimony of Jeff Patout, who stated that the execution of the instrument was to get a listing on defendant's property. Patout did not testify that he was authorized to bind defendant Romero to a contract to sell.
We determine that the agreement marked P-2, was a listing agreement, simply granting authority to the agent to promote a sale of defendant's property, nothing more. It is clearly not a written offer of sale from defendant to plaintiff for the latter is not therein named as the prospective purchaser, did not sign the same and in short never became a party thereto. Plaintiff's contention that the document P-2 constitutes a valid written offer of sale between him and defendant and that the documents marked P-3, P-4 and P-1B[5] reflect his timely acceptance in writing of this offer is untenable. Plaintiff is not named or otherwise referred to in P-2 or P-3. Plaintiff's connection with these documents can only be established by parol evidence which is not allowed under our law. As set forth in Scurto v. LeBlanc, 191 La. 136, 184 So. 567 (La.1938):
"It is axiomatic under the law and jurisprudence of this State that parol evidence is inadmissible to create a title in one who never owned the immovable property or to show that the vendee was in reality some other person than the person named in the act of sale. Ceromi v. Harris, 187 La. 701, 175 So. 462, and the authorities therein cited."
See also Eberle v. Eberle, 161 La. 313, 108 So. 549 and Miles v. Miles, 328 So.2d 394 (La.App. 3rd Cir. 1976). The letters above referred to (P-5) are meaningless as when written there was no binding written offer of sale extant between plaintiff and defendant which could be accepted.
It can be reasonably concluded from the evidence in the record that following execution of the listing agreement defendant's agent verbally agreed to convey the property in question to plaintiff and pursuant thereto plaintiff tendered to the agent the $1000.00 in cash which was receipted for by defendant. As aforesaid we determine that defendant's listing agent did not have the authority to conclude a sale on behalf of defendant. However, even if it be concluded that by accepting the deposit defendant ratified the action of his agent in verbally agreeing to convey the property to plaintiff the latter's position is not enhanced. It is well settled that a contract to purchase or sell realty must be in writing. Parol evidence cannot be received to prove the existence of such a contract. R.C.C. Articles 2275, 2276, 2462; Gelpi v. Buccola, 153 So.2d 486 (La.App. 4th Cir. 1963); Louisiana State Board of Education v. Lindsay, 227 La. 553, 79 So.2d 879 (La.1954); Klotz v. Gertrude Gardner, Inc., 293 So.2d 601 (La. App.4th Cir. 1974), writ refused July 1, 1974.
*886 Having determined that there never existed a written agreement between plaintiff and defendant for a purchase and sale of the immovable property in question it is axiomatic that plaintiff is not entitled to the relief sought.
For the above and foregoing reasons the judgment appealed from is reversed and it is now ordered that plaintiff's suit be dismissed with prejudice. All costs of these proceedings at trial and on appeal are to be borne by plaintiff-appellee.
REVERSED AND RENDERED.
NOTES
[1] Plaintiff-appellee raises no issue as to the trial court's denial of specific performance under the contract to sell. Defendant prior to institution of the instant matter had sold the property in question to a good faith, 3rd party purchaser.
[2] Mr. F. M. "Pete" Olivier died prior to the trial of this matter.
[3] Considering our ultimate conclusion that P-2 was simply a listing agreement which did not authorize the agent to bind the principal we deem it unnecessary to determine whether under said agreement F. M. "Pete" Olivier or Jeff Patout, or both were made agent.
[4] A review of P-2 reveals that defendant's signature was preceded by an X mark.
[5] P-4 is a letter dated November 7, 1972 from plaintiff to his attorney, Gerald Simon asking Simon to act as his agent in accepting defendant's offer dated September 18, 1972. Plaintiff further asked that the attorney secure defendant's signature on the sale.

P-1B is a stipulation which sets forth that Gerald Simon, plaintiff's attorney received plaintiff's letter dated November 7, 1972 and thereafter wrote to defendant by letter dated November 8, 1972 advising defendant that the sale contract had been prepared and would be ready for his signature on November 13, 1972.