DOMENGEAUX, Judge.
This is a suit brought by a real estate broker to recover his commission under a listing contract.
Defendant, Carol Ann Tynes, owned a 65-acre tract of land, apparently her separate property, in Natchitoches, which she was thinking of selling. Plaintiff, Melvin Stevens, a real estate broker, thought that the Natchitoches Economic Development Corporation (NEDCO), a federally funded organization, was interested in purchasing the land. He approached Mrs. Tynes and obtained a listing agreement on October 28, 1976. The agreement provided that Stevens would be the exclusive selling agent of the property and that defendant was to receive no less than $1,000.00 per acre. The broker’s commission was to be all amounts received for the land in excess of $1,000.00 per acre and would be due if he found a purchaser who was ready, willing, and able to buy the property. The listing agreement had a term of three months.
In addition to being a broker, plaintiff was also a faculty member of Northwestern State University. Stevens learned of NED-CO’s interest through his association with Doctor Zoel Daughtery, a fellow faculty member who was on the committee appointed by NEDCO to select a site for a proposed vegetable growing project. After securing the listing agreement, plaintiff submitted an oral bid to Daughtery of $1,250.00 per acre for the land. The Tynes site was ultimately approved by the committee.
Before any definite agreement for the sale of the property could be reached, it was necessary for the proposal to be approved by the Board of Directors of NEDCO and the Community Services Administration in Washington, D. C. The approval in Washington was necessary because the Tynes tract did not meet the proposed guidelines originally set forth by the federal government. The guidelines authorized NEDCO to purchase only thirty acres of land at $2,500.00 per acre; the Tynes tract involved *9 sixty-five acres of land at $1,250.00 per acre.
About the same time that the selection committee was considering the Tynes property, Mrs. Tynes telephoned Stevens on November 14, 1976, in order to inform him that she desired the property withdrawn from the market. Plaintiff refused and continued with his plan to have NEDCO purchase the land. He made several contacts with his university colleague, Doctor Daughtery, and with Mr. Ryan Horton, Executive Director of NEDCO, in order to ascertain whether the Board had authorized the purchase. On December 3, 1976, Stevens met with Horton and began negotiations. Horton, however, refused to finalize any plans until the property was appraised and the proper approval and authorization was secured. Although Stevens was ready to finalize the agreement to purchase at this time, he was apparently unaware that the proposal had never been submitted to, let alone approved by, the Board of Directors. He was also unaware that approval from Washington, D. C., would be necessary. Nevertheless, an appraiser, T. J. Stevens, was obtained to conduct an appraisal of the property. When the appraiser contacted the Tyneses he was advised by Mr. Tynes, acting with his wife’s authority, that the property was not for sale. This information was related to Horton, who thereupon ceased to take any further steps towards acquisition.
The property was never sold. Mrs. Tynes withdrew the property from the market because she found that the rental value was much higher than she had been obtaining from her current lessee. A new lease arrangement was entered into at an increased rate, which obviated the necessity of selling the land.
Suit was filed on March 4, 1977, by the broker to recover a commission of $16,-250.00, which would have been the amount had the property been sold at the proposed price of $1,250.00 per acre. In the alternative, plaintiff sought recovery of $4,875.00, which was six percent, or the standard realtor’s percentage, of the total proposed selling price. Further alleging in the alternative, plaintiff sought to recover for the amount of time spent in negotiating the sale of the property. From a judgment denying his right to the commission or recovery on a quantum meruit basis, plaintiff has perfected a devolutive appeal. We affirm.
The issues presented by plaintiff on appeal involve the right of Mrs. Tynes to cancel the listing agreement before the expiration of its term; the right of the broker to collect his commission; and the right of the broker to recover in quantum meruit.
It is apparent that the listing agreement was a valid contract and that revocation could not take place without the mutual consent of the parties.[1] Article 1779 of the Louisiana Civil Code sets forth the necessary requisites of a valid contract.
“Four requisites are necessary to the validity of a contract:
1. Parties legally capable of contracting.
2. Their consent legally given.
3. A certain object, which forms the
matter of agreement.
4. A lawful purpose.”
There is no question that both Mrs. Tynes and Mr. Stevens had the capacity to contract. Concerning the second requisite, Mrs. Tynes testified that she was aware of all the provisions in the contract and that she signed it freely and voluntarily. With regard to the third requisite, it was anticipated at the time the contract was entered into that Mr. Stevens would find a buyer for the property and that he would receive a commission for his services when the property was sold. This was the object of the agreement. Finally, there is no question that the contract had a lawful purpose.
*10 Article 1901 of the Louisiana Civil Code states that:
“Agreements legally entered into have the effect of laws on those who have formed them.
They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law.
They must be performed with good faith.”
It follows from this Article that Mrs. Tynes could not have revoked the agreement between Stevens and herself, without Stevens’ consent. It is not denied that Stevens never acquiesced in the revocation. The contract, therefore, was still enforceable while Stevens was attempting to procure NEDCO as the purchaser.
The next issue is whether there could be any recovery under the contract on the part of the broker. It is well settled that a broker can recover his commission when there is no sale, if he procures a buyer who is ready, willing, and able to purchase the property. "In fact, the express provisions of this contract provided that the commission would be due if Stevens found such a buyer. However, we find that in the instant case, Stevens had not procured a purchaser who was ready, willing, and able to buy.
NEDCO was the only prospect Stevens had while the contract was in effect. Although negotiations were under way to secure ultimate purchase of the property, at no stage had they reached such a level that NEDCO was prepared to finalize the sale. The proposal had not even been submitted to the Board of Directors, and there was no guarantee that the Board would have approved the purchase of the property after submission. The facts indicate that such approval may not have been given because the property was not ideally suited to NED-CO’s needs. NEDCO was looking for a tract of land less than half the size of defendant’s property. Furthermore, even had the site been approved by the Board, final approval had to be secured from the Community Services Administration in Washington, D. C., and there was no way of knowing if this approval would be given. In short, the facts of this case clearly establish that Stevens had not procured a purchaser ready, willing, and able to buy the property, thus Stevens was not entitled to his commission on the basis of the contract.
Plaintiff argues, however, that he should be allowed to recover his commission because Mrs. Tynes breached her obligation by allowing her husband to tell the appraiser that the property was not for sale. He contends that since payment of the commission was conditioned in the express provisions of the contract upon finding a purchaser ready, willing and able to buy the property, and since this condition could not be fulfilled because of Mrs. Tynes’ actions, the condition should be considered fulfilled under Article 2040 of the Civil Code, which provides:
“The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it.”
This Article is not applicable to the present case. We feel that in order to consider the condition fulfilled, some showing must be made that the contract would have been fulfilled had it not been for the action of Mrs. Tynes. See George W. Garig Transfer v. Harris, 226 La. 117, 75 So.2d 28 (1954). There has been no evidence which establishes that NEDCO would have purchased the property had it not been for the fact that they were told that the property was not for sale. To find otherwise would be mere speculation or conjecture. We feel, therefore, that the condition cannot be considered fulfilled simply because Horton ceased negotiations after being informed by the appraiser that the property was not for sale.
The last issue concerns plaintiff’s right to recovery under his alternative plea for quantum meruit. We feel that no recovery is due on this basis. Plaintiff rendered no services which were of value to defendant. Furthermore, the broker knew at the time he entered into the contract that he may have been required to incur *11 certain expenses which would go without reimbursement in the event he did not find a person who was ready, willing, and able to purchase the property. Since the contract in this case was valid and could have been collected upon had its conditions been fulfilled, we feel that if plaintiff was to recover on any basis it would have to be by virtue of the contract itself and not under the quasi-contractual remedy of quantum meruit. It is well established that if recovery can be sought on the basis of an express contract, recovery in quantum meruit is not available. Olympia Company, Inc. v. Gervais F. Favrot Company, Inc., 342 So.2d 1275 (La.App. 4th Cir. 1977); Babineaux v. Grisaffi, 180 So.2d 888 (La.App. 3rd Cir. 1965); Pumilia v. Dileo, 169 So.2d 581 (La.App. 4th Cir. 1964); Oldham v. Jones, 136 So.2d 310 (La.App. 2nd Cir. 1961). We therefore find that Stevens was not entitled to relief on a quantum meruit basis.
For the above reasons the judgment of the District Court is affirmed at appellant’s costs.

AFFIRMED.

. A contract of brokerage is sui generis and is to be distinguished from that of mandate. Fleming v. Romero, 342 So.2d 881 (La.App. 3rd Cir. 1977), application denied, 345 So.2d 50 (La.1977); Leggio v. Realty Mart, Inc., 303 So.2d 920 (La.App. 1st Cir. 1974), writ denied, 307 So.2d 629 (La.1975); Yiannopoulas, Brokerage, Mandate, and Agency in Louisiana: Civilian Tradition and Modern Practice, 19 La.L.Rev. 777 (1959).