CHEHARDY, Judge.
Defendant, C. Robert Bohn, appeals a district court decision in favor of plaintiff, *1206 John Kent Chauvin, and against the defendant in the sum of $4,000 together with legal interest from date of judicial demand, until paid, and for all costs.
In giving his reasons for judgment, the trial court judge stated:
“The Parties confected an oral agreement which was reduced to writing as evidenced by the Defendant’s check and deposit, which was deposited prior to the Plaintiff, Chauvin, being advised by the Defendant, Bohn, that the agreement for the purchase and sale of Plaintiff’s home (No. 13 Weinning Drive, Willowdale Subdivision, St. Charles Parish, Louisiana, for and in consideration of the purchase price of $80,000.00) was being cancelled and awarding to John Kent Chauvin, the Plaintiff herein, the sum of $4,000.00 representing forfeiture of the deposit by C. Robert Bohn for breach of contract.
“Judgment will be rendered accordingly.”
We agree and affirm.
The record reveals that on August 15, 1976, the defendant and his wife, along with several other persons, toured the plaintiff’s house located in the Willowdale Subdivision in Luling, Louisiana, which plaintiff had placed on the market for sale. After a discussion of price, the parties agreed on the amount of $80,000. Bohn then wrote a check payable to the order of “John Kent” for $4,000 and on the back of the check noted:
Mrs. Chauvin testified that defendant also, at the time of this transaction, kissed her and said he was not going to put her out of her house. Bohn also indicated to Chauvin that if the new house the plaintiff and his wife were building was not finished when the act of sale was passed on the subject house, he would rent the house to the Chauvins until they could move. Mrs. Chauvin also testified that, upon leaving the residence, Bohn said he would not leave until the “For Sale” sign was out of the yard because he did not want someone else coming in and trying to buy the house. She said her husband then pulled up the sign and put it in the garage. Mrs. Chauvin also testified that her husband called the defendant several hours after he left to tell him he had neglected to put the plaintiff’s last name on the check and that Bohn then instructed the plaintiff to go ahead and write it in.
Mr. Chauvin testified he did not endorse and deposit the check until the afternoon of Thursday, August 19, at which time he said he also deposited his paycheck. He said on returning home that evening he learned from his wife that Bohn wanted to speak to him and when he returned the defendant’s call, he was told by Bohn that his wife did not want the house, and, he added, “so we can’t made a deal.” Chauvin was later informed by his bank there had been a stop payment issued on the check.
Although Bohn could not remember what time of the afternoon he spoke to Mr. Chau-vin on August 19, he said he spoke to Mrs. Chauvin sometime in the morning of that day and told her he did not want the house. Mrs. Chauvin, however, testified it was a babysitter with whom Bohn spoke, someone who works for her on Thursdays, and when she checked with this person, which she usually does between four and five o’clock, she was told Bohn wanted her husband to call him.
The bank statement of Mr. and Mrs. Chauvin lists a deposit of $4,000 and another deposit of $496.25 (which Chauvin described as his paycheck), dated August 20, 1976. Chauvin also testified he got paid on August 19 and deposited both checks that afternoon after work. The plaintiff also *1207 attempted to introduce a letter from his bank signed by the assistant cashier. The defendant’s objection thereto was sustained by the trial court judge and admitted only as a proffer. However, this court holds that we are able to consider the letter only for the limited purpose of establishing there is a 2 p. m. close out of that bank’s teller windows. If Chauvin had deposited the subject check after 2 p. m. on the afternoon of August 19, therefore, it would not have been credited to his account until August 20, 1976.
In the case of Liuzza v. Panzer, 333 So.2d 689 (La.App. 4th Cir. 1976), the court said at 691:
“Our jurisprudence is well settled that agreements to buy and sell real estate must be in writing to be binding and enforceable. Klotz v. Gertrude Gardner, Inc., 293 So.2d 601 (La.App. 4th Cir. 1974), writ refused, 296 So.2d 831 (La. 1974). See LSA-C.C. arts. 2275, 2439, 2440 and 2462. In Torrey v. Simon-Torrey, Inc., 307 So.2d 569 (La.1974), the Louisiana Supreme Court stated that the rule ‘allowing proof by parol evidence of a subsequent agreement to modify or to revoke a written agreement, is not applicable to a case in which the agreement is one required by law to be in writing’. In the instant case, we conclude the written offer to purchase at a reduced price, verbally accepted by the seller, did not constitute a valid agreement to modify the original purchase agreement.”
In the present case, this court holds, as did the district court, that the writing on the back of the check was sufficient to satisfy the requirement, under the jurisprudence of this State, that all offers to buy and sell real estate must be in writing. We note several cases where similar notations were held to satisfy this requirement: Guice v. Mason, 156 La. 201, 100 So. 397 (1924); Law v. Blackshire, 367 So.2d 1237 (La.App. 3d Cir. 1979).
In the case of National Co. v. Navarro, 149 So.2d 648 (La.App. 4th Cir. 1963), the court noted, however, citing LSA-C.C. art. 1800, that it is the general rule that offers may be revoked at any time before they are accepted. In the present case we agree with the district court judge’s finding of fact that the plaintiff and the defendant did confect an oral agreement to buy and sell the plaintiff’s house on August 15,1976, and on that date the offer to buy the house was put into writing by the defendant. There is also ample evidence in the record to support the district court’s conclusion that the plaintiff reduced his oral acceptance of the defendant’s written offer to writing when he endorsed and deposited the check and that these actions on his part took place before the defendant communicated his desire to withdraw from the agreement.
In the case of Miller v. Smith, 151 So.2d 83 (La.App. 1st Cir. 1963), the court declared that unless the deposited money on a contract of sale is declared not to be earnest money, then it is presumed to be earnest money. LSA-C.C. art. 2463 also states:
“But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double.”
In the present case, therefore, this court holds that the $4,000 deposit on the purchase price of the home given by check by the defendant was earnest money and for that reason was forfeited by him when he receded from the promise to buy the plaintiff’s house.
For the reasons assigned, the district court judgment is affirmed.
AFFIRMED.