411 So.2d 442 (1982)
John Kent CHAUVIN
v.
C. Robert BOHN.
No. 81-C-2139.
Supreme Court of Louisiana.
March 1, 1982.
Rehearing Denied April 5, 1982.
Edward F. Wegmann and Geoffrey H. Longenecker, of Wegmann & Longenecker, New Orleans, for defendant-applicant.
Dudley D. Flanders, of Flanders & Flanders, New Orleans, for plaintiff-respondent.
DIXON, Chief Justice.
The central issue presented in this case is whether a notation on the back of a personal check given to the vendor of a residence as a down payment suffices as a written contract to buy an immovable.
The facts are as follows:
Plaintiff-vendor, John Kent Chauvin, placed his residence in the Willowdale Subdivision in Luling, Louisiana, up for sale in the summer of 1976. On Sunday, August 15, 1976, defendant-vendee, C. Robert Bohn, and his wife heard that the house was on the market. They were interested in moving to the area so they telephoned the Chauvins and arranged a tour of the home. After looking at the house, Mr. Bohn inquired about the purchase price. Mr. Chauvin stated that he was asking $85,000.00. Mr. Bohn offered to pay $80,000.00 and Mr. Chauvin responded that he would accept *443 that amount. The parties walked back inside the house where Mr. Bohn wrote a personal check to Mr. Chauvin for $4,000.00. Mr. Chauvin objected to the figure because he believed the deposit should be 10% of the purchase price, or $8,000.00. Mr. Bohn replied that he had already written the number $4,000.00 on the check, that he did not have another check with him, and that this would be a cash sale requiring no financing. Mr. Chauvin testified that he then agreed to accept the $4,000.00 as a down payment. Since Mr. Bohn's attorney was out of town for the week, the parties agreed to wait until the attorney returned to draw up the act of sale.
As the Bohns were leaving, Mr. Bohn jokingly requested that the "For Sale" sign staked up in the front yard be removed. Mr. Chauvin complied and put the sign in the garage. There was some discussion about how soon the Bohns would want to move into the residence. Mrs. Chauvin expressed concern about having to move into an apartment with their three small children because it would be some time before a new home could be built. Mr. Bohn kissed her, said they were not in a hurry to move, and assured her that the Chauvins could stay in the house as long as necessary and just pay rent. Mr. Chauvin volunteered to find out the current rental values in the vicinity.
A few hours later, Mr. Chauvin examined the check and realized that Mr. Bohn had made the check payable to "John Kent," omitting Mr. Chauvin's last name. Mr. Chauvin telephoned the Roussel residence where Mr. and Mrs. Bohn had been visiting. The Bohns were still at the Roussels; Mr. Bohn instructed Mr. Chauvin to simply write in his last name on the instrument. At this point it is clear that one intended to buy, and gave a check to evidence his intention; the other intended to sell. The thing and the price were fairly certain. Each, however, contemplated consulting his lawyer, and assumed there would be a simple cash transaction. It is fair to assume that each would probably follow his attorney's advice.
Mr. Bohn testified that he tried several times during the next few days to reach Mr. Chauvin because Bohn's wife decided she did not want the house. On Thursday, August 19, Mr. Bohn contacted someone at the Chauvin residence. Mr. Bohn testified that he spoke with Mrs. Chauvin in the morning; on the other hand, Mrs. Chauvin testified that she always goes shopping on Thursdays and that Mr. Bohn talked to the baby sitter. In any event, when Mr. Chauvin arrived home his wife told him Mr. Bohn had telephoned earlier in the day. Mr. Chauvin returned the call only to learn that Mr. Bohn no longer wished to go through with the sale.
It is impossible to discern from the testimony exactly when Mr. Chauvin deposited the check given to him by Mr. Bohn on the previous Sunday. Mr. Chauvin admitted that he did not deposit the check immediately after receiving it; he testified that his lawyer advised him on Monday to "hold onto the check." He asserts that the check was deposited, along with his paycheck, on the afternoon of Thursday, August 19, before his conversation with Mr. Bohn; the check was posted to Mr. Chauvin's bank on Friday, August 20.[1] Mr. Bohn argues that Mr. Chauvin deposited the check some time after having been informed that the sale was off. Although Mr. Bohn testified that he went to his bank in New Orleans at 9:00 a. m. on Friday, August 20 to stop payment on the check, the stop payment order is dated August 20 at 2:00 p. m. The $4,000.00 deposit was initially credited to Mr. Chauvin's account on August 20. However, *444 payment was stopped on August 23 and the account later debited on August 26.
Mr. Chauvin filed suit to recover $4,000.00 liquidated damages alleging that the deposit constitutes earnest money pursuant to a valid and enforceable contract to sell.[2] The trial court found in favor of Mr. Chauvin, awarding him $4,000.00 as a forfeit of the deposit. The court held:
"The Parties confected an oral agreement which was reduced to writing as evidenced by the Defendant's check and deposit, which was deposited prior to the Plaintiff, Chauvin, being advised by the Defendant, Bohn, that the agreement for the purchase and sale of Plaintiff's home (No. 13 Weinning Drive, Willowdale Subdivision, St. Charles Parish, Louisiana, for and in consideration of the purchase price of $80,000.00) was being cancelled and awarding to John Kent Chauvin, the Plaintiff herein, the sum of $4,000.00 representing forfeiture of the deposit by C. Robert Bohn for breach of contract."[3]
The judgment was affirmed on appeal. La.App., 400 So.2d 1205. Certiorari was granted to review the disposition of this matter by the lower courts.
A notation on the back of the check, put there by Mr. Bohn, the maker of the check and the prospective purchaser, lies at the center of this controversy:

C.C. 1798 provides:
"As there must be two parties at least to every contract, so there must be something proposed by one and accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point."
Once a contract is confected, each party confers on the other the right of judicial enforcement (see C.C. 1799); however, the Code permits the offeror to withdraw the offer so long as the other party has not previously accepted. C.C. 1800 states:
"The contract, consisting of a proposition and the consent to it, the agreement is incomplete until the acceptance of the person to whom it is proposed. If he, who proposes, should before that consent is given, change his intention on the subject, the concurrence of the two wills is wanting, and there is no contract."
A preliminary question raised by the facts is, if Mr. Bohn's execution and delivery of the check to Mr. Chauvin amounted *445 to an offer to purchase the property, did Mr. Chauvin's endorsement and deposit of the instrument constitute a timely acceptance of the offer. Both lower courts made a factual determination that Mr. Chauvin deposited the check before Mr. Bohn withdrew his proposal by stopping payment on the instrument. (The check was probably deposited before Bohn's withdrawal from the transaction was communicated to Chauvin). The facts support this finding. Mr. Chauvin testified that he deposited the check on Thursday afternoon, August 19. Since the stop payment order was not issued until some time on Friday, August 20, as late as 2:00 p. m. according to the order itself, it is reasonable to conclude that the deposit preceded issuance of the stop payment order. Thus, if the means employed by Mr. Chauvin to accept the offer to buy satisfy the codal requirements, Mr. Bohn is bound; his attempted revocation came too late.
The court of appeal held that Mr. Chauvin reduced his oral acceptance to writing when he endorsed the check and deposited it. If the contract did not involve immovable property, the form of the acceptance would be less important. However, all contracts regarding transfers of immovables must be in writing. C.C. 2275.[4]
In Louisiana State Board of Education v. Lindsay, 227 La. 553, 569, 79 So.2d 879, 885 (1955), this court held that an oral acceptance by telephone was insufficient under the mandate of C.C. 2275. The court stated:
"It is manifest, therefore, that not only must an option to buy immovable property `be evidenced by a written instrument' but the unqualified acceptance thereof be evidenced in writing, giving full rcognition (sic) to and in accordance with the terms and conditions of the proposal, and formally exercised and tendered to the proposer prior to the expiration of the stipulated time."
Perhaps if the prospective seller could produce a separate writing to evidence the contract between the parties, the insufficiency of the form of acceptance would not be determinative. Here, the mere endorsement and deposit of the check falls short of an "acceptance" of the offer to buy. Nothing in the words on the instrument denotes consent to a sale of the tract on certain terms. Both the offer and the acceptance, if the contract takes that form alone, must be in writing and must declare the parties' intent to be bound.[5]
C.C. 2462 reads, in part, as follows:
"A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same."
(The first paragraph of C.C. 2462 treats a promise of sale, more commonly termed a contract to sell. It may be defined as an agreement to buy and sell where the parties anticipate a sale, but which is not yet a sale as it does not transfer ownership. Litvinoff, *446 Of the Promise of Sale and Contract to Sell, 34 La.L.Rev. 1017, 1068 (1974)).
In Klotz v. Gertrude Gardner, Inc., 293 So.2d 601 (La.App.1974), writ refused, 296 So.2d 831 (1974), a telegram was wired to the vendor which said: "Reference my offer to purchase 1019 Constantinople. Confirm my verbal agreement of 6 December, counteroffer of $35,000 accepted." The vendor had not signed an agreement to sell at this price. The court correctly held that no binding written contract to sell existed. See also, Roy O. Martin Lumber Co. v. Saint Denis Securities Co., 225 La. 51, 72 So.2d 257 (1954); Fleming v. Romero, 342 So.2d 881 (La.App.1977), writ refused, 345 So.2d 50 (1977); Manuel v. Moity, 313 So.2d 278 (La.App.1975), writ refused, 318 So.2d 48 (1975).
Mr. Chauvin relies, as did the court of appeal, on the early decision in Guice v. Mason, 156 La. 201, 100 So. 397 (1924), to support the position that the check is adequate. In Guice, an oral agreement to sell an 80 acre tract for $400.00 was confected. As part payment, the vendee made a $100.00 payment to the vendor who gave the following receipt:
"`Received of T. J. Guice, of DeSoto Parish, La., the sum of one hundred dollars ($100) in part payment of a certain 80-acre tract of land laying broadside with the 160-acre tract that he now lives on. This the 7th day of March, A.D., 1889. W. H. Mason.'" 156 La. at 204, 100 So. at 398.
The court noted that the vendor admitted (either in his answer or in testimony) that he sold the property to the vendee and that the vendee took possession of the property. Although the case was not decided on this point, the vendor was bound by virtue of his admission of the sale and delivery to the vendee, regardless of the language in the receipt. See C.C. 2275.
The notation on the back of the check is insufficient to satisfy the codal requirements. It represented the prospective purchaser's conception of the transaction, and showed that the sum of $4,000.00 was subtracted from the total price, jotted down by the buyer. There is no dispute that the parties intended to wait until the attorneys could draft the necessary documents and take care of the details connected with the transaction. There is, however, nowhere on the document the words "I agree to sell" and "I agree to buy" or the equivalent. Language to this effect manifests the reciprocal consent of each party to be bound; it instills solemnity in the transaction and completes the proof. In essence, Mr. Chauvin asks the court to look at extrinsic evidence surrounding the giving of the check to establish the missing elements of a contract to sell. It is the writing and the words that are important in the sale of immovables, not extrinsic evidence.
"Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since." C.C. 2276.
In light of the prohibition in this article, the court is constrained to an examination of the instrument itself; the words found there do not constitute a valid contract to sell.
For these reasons, the judgment appealed from is reversed and the suit dismissed at plaintiff's cost.
MARCUS and LEMMON, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
I agree with the courts below that the writing on the back of the check was sufficient to satisfy the requirement that all offers to buy and sell real estate must be in writing and that Chauvin reduced his oral acceptance of Bohn's written offer to writing when he endorsed and deposited the check before Bohn communicated his desire to withdraw from the agreement. Hence, the $4,000 deposit on the purchase price of the home given by check by Bohn was earnest money and was forfeited by him when he receded from the promise to buy Chauvin's home. The courts below properly rendered judgment in Chauvin's favor for this amount. Accordingly, I respectfully dissent.
*447 LEMMON, Justice, dissenting.
A valid contract to sell requires the thing, the price and the consent. C.C. Art. 2456, 2462. The thing to be sold and the selling price are clearly set forth in the contract itself (the check), and the buyer's consent is also evidenced on the instrument that he drew.[1]
It is only the seller's consent which is truly at issue.[2] The seller's taking possession of the instrument and his subsequently depositing it clearly evidenced his consent to sell No. 13 Weinning Drive to Bohn for a selling price of $80,000. No other reasonable explanation can be given for his action.
The lower courts correctly found the seller consented to the buyer's written offer prior to the withdrawal of that offer.[3] The judgments of the lower courts should be affirmed.
NOTES
[1] Plaintiff sought to introduce a letter from a bank representative to show that he deposited the check on August 19 after 2:00 p. m., but, due to banking procedure, the check was not posted until the following morning. However, the trial court refused to allow the letter into evidence because the author was not present to testify. The letter was apparently written in response to plaintiff's statement to the bank official that he deposited the check on the 19th, over three years after these events took place. The court of appeal held that it could only consider the proffer of the letter for the "limited purpose of establishing there is a 2 p. m. close out of that bank's teller windows." 400 So.2d 1205 at 1207.
[2] The concept of earnest money is found in C.C. 2463:

"But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double."
It is not necessary to give earnest in order to suspend the transfer of ownership. Rather, earnest money acts as a substitute for performance, allowing either party to withdraw from the contract upon forfeiting the earnest. Earnest money is most often seen in conjunction with a promise of sale, or contract to sell, where the buyer gives a deposit to the seller. The jurisprudence has adopted a rule that any payment made in connection with a contract to sell will be considered earnest money, unless the parties expressly provide otherwise. Smith, An Analytical Discussion of the Promise of Sale and Related Subjects, Including Earnest Money, 20 La.L.Rev. 522 (1960); Comment, Deposits in Contracts to Sell Immovable Property in Louisiana, 26 Tul.L.Rev. 498 (1952); See also, Hebert, The Function of Earnest Money in the Civil Law of Sales, 11 Loyola L.J. 121 (1930).
[3] In his petition, plaintiff prayed in the alternative for $6,810.00 which is alleged to be the difference between the contract price agreed on by the parties and the price actually received by plaintiff ($74,690.00) plus $1,000.00 attorney fees and $500.00 for aggravation and annoyance.
[4] Although C.C. 2275 literally demands only that transfers of immovable property be in writing, the jurisprudence has construed the article to encompass all contracts concerning immovable property. Torrey v. Simon-Torrey, Inc., 307 So.2d 569 (La.1974); Little v. Haik, 246 La. 121, 163 So.2d 558 (1964); Louisiana State Board of Education v. Lindsay, infra; Hoth v. Schmidt, 220 La. 249, 56 So.2d 412 (1951); Fox v. Succession of Broussard, 161 La. 949, 109 So. 773 (1926); see generally, Comment, Writing Requirements and the Authentic Act in Louisiana Law: Civil Code Articles 2236, 2275 & 2278, 35 La.L.Rev. 764 (1975).
[5] In Joseph v. Moreno, 2 La. 460 (1831), the court held that a written promise to sell signed only by the vendor was valid and that acceptance by the vendee could be established by evidence extraneous to the written instrument. The same conclusion was reached in Miller v. Miller, 335 So.2d 767 (La.App.1976), writ refused, 338 So.2d 927 (1976).

Saunders v. Bolden, 155 La. 136, 98 So. 867 (1923) and Succession of Jenkins, 91 So.2d 416 (La.App.1956) have been misinterpreted. See 35 La.L.Rev. 764, 769. Both involved acts of sale, signed by the vendor and not by the vendee; in Saunders, the vendee went into possession and the deed was held effective; in Jenkins, the deed included an act of assumption of a mortgage, was not signed by the vendee and was held not translative of title.
[1] The wording on the check, particularly the words "Deposit for 13 Weinning Dr." and "Selling price", clearly indicates the purchaser's consent to buy 13 Weinning Drive for a selling price of $80,000. Although the words "I agree to buy" do not appear anywhere on the instrument, that intent is made evident on the instrument itself.
[2] The buyer also contends that the contract was incomplete because no date was stated for the passing of the act of sale and no terms were given for payment of the amount of the selling price in excess of the deposit. However, the absence of these conditions of the sale does not detract from a conclusion that there was a consensual agreement to the thing and the price. When the parties consent to buy and to sell a certain thing for a certain price, the law presumes that the sale will take place within a reasonable time, and in the absence of a stipulation for terms of credit, the law presumes that the sale will be for cash.
[3] The record supports the trial court's factual finding that the seller deposited the check prior to the buyer's withdrawal of the offer. Since it is not the function of this court to substitute its judgment for that of the trier of fact on factual findings which are supported by the record, I accept the fact that the seller's acceptance was made timely before the withdrawal.